**GULF INSURANCE CO., Respondent–Appellant,**

v.

**NOBLE BROADCAST, et al., Respondents,**

**Angelia Fuller, Appellant–Respondent.**

**No. 78891.**

Supreme Court of Missouri,
En Banc.

Jan. 21, 1997.

John E. Turner, Kansas City, for Appellant–Respondent.

Martin M. Loring, M. Courtney Koger, Kansas City, for Respondent–Appellant.

COVINGTON, Judge.

Angelia Fuller was injured at a "Free Money" parade conducted by Noble Broadcast as a promotion for a radio station owned by Noble. A Noble employee drove the station's mobile studio in the parade and tossed money to the crowd. The crowd at the parade pushed close to the parade vehicles, pushing Fuller in front of the mobile studio. One of the wheels of the mobile studio ran over her lower leg. She suffered injuries to her leg.

Fuller filed suit against Noble Broadcast and the driver of the mobile studio, a Noble employee. Fuller alleged that Noble was negligent in conducting a parade without adequate safety precautions and for negligently operating the mobile studio. Noble removed the case to the United States District Court for the Western District of Missouri.

Noble had a business auto insurance policy with Pacific Indemnity Insurance Company and a commercial general liability policy (CGL Policy) with Gulf Insurance Company. Noble informed Gulf of the pending federal case and asked Gulf to defend the suit against Fuller. Gulf refused to defend the suit. Relying upon an auto exclusion in the CGL Policy, Gulf asserted that Fuller's injuries were not covered because the mobile studio used in the parade came within the definition of "auto" in the policy. Noble and Pacific defended the case against Fuller without the participation of Gulf.

Noble, Pacific, and Fuller entered into a settlement agreement pursuant to the terms of section 537.065, RSMo 1994. The agreement provided that Pacific would pay $187,500 to Fuller. Noble also agreed to have a consent judgment entered against it for $1,000,000, the limit of the CGL Policy. The federal district court entered the judgment on Fuller's claim that Noble was negligent in conducting the parade. Fuller dismissed all other claims.

On the same grounds that Gulf refused to defend the suit, it refused to pay the judgment. Gulf then filed a declaratory judgment action in the circuit court of Jackson County asking the state court to find that Fuller's injuries were not covered by the CGL Policy. Gulf also asked the trial court to hold the settlement agreement unenforceable against Gulf on the grounds that it was unreasonable, collusive, and obtained by fraud. Gulf later abandoned the fraud argument.

The trial court granted Fuller, Pacific, and Noble summary judgment on the issue of coverage. Finding the language of the policy ambiguous and resolving the ambiguity in favor of the insured, the trial court found that Fuller's injuries were covered under the CGL Policy. After conducting a trial on the validity of the settlement agreement, the trial court found the settlement to be unenforceable because the amount was unreasonable.

Both parties appealed. Fuller appealed the trial court's determination that the settlement was unreasonable. Gulf appealed the summary judgment finding that the CGL Policy covered Fuller's injuries. The court of appeals held that Fuller's injuries were not covered under the CGL Policy. The court, therefore, did not address the issue of reasonableness. This Court granted transfer. The judgment of the trial court is affirmed in part and reversed and remanded in part.

## GULF'S APPEAL

The CGL Policy provides, in pertinent part:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies....

Exclusions

■ This insurance does not apply to ...

g. 'Bodily injury' or 'property damage' arising out of the ownership, maintenance,

use or entrustment to others of any ... 'auto' owned or operated by ... any insured."

. . . .

The CGL Policy contains a special events endorsement that provides in relevant part:

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING SHALL BE INCLUDED AS THE TERMS AND CONDITIONS OF THIS POLICY:

SPECIAL EVENTS SHALL INCLUDE ... PARADES ...

. . . .

Subject otherwise to all the terms, limits and conditions of the Policy.

Gulf asserts that the language of the policy, including the policy exclusion, is plain and unambiguous; therefore, this Court must enforce the policy as written. *Peters v. Employers Mut. Casualty Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993); *Harrison v. M.F.A. Mut. Ins. Co.*, 607 S.W.2d 137, 142 (Mo. banc 1980). Gulf contends that the plain meaning of the auto exclusion in the CGL Policy exempts Fuller's injuries from coverage under the policy. "This insurance does not apply to ... bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any ... 'auto'... owned or operated by ... any insured." Although the special events endorsement states that the policy provides coverage for parades, the policy itself excludes coverage for bodily injury arising from the use of an auto owned or operated by Noble. Since Fuller was injured by a mobile studio, Gulf submits, the plain meaning of the auto exclusion acts to deny Fuller coverage.

Gulf contends that this Court must read the endorsement in conjunction with the terms of the entire policy, including the auto exclusion, to determine the plain meaning of the CGL Policy. *Abco Tank & Mfg. Co. v. Fed. Ins. Co.*, 550 S.W.2d 193, 198 (Mo. banc 1977). The special events endorsement itself does not provide coverage by its own terms; it merely defines the types of special events that may be covered by the terms of the policy. The endorsement states that it is "[s]ubject otherwise to all the terms, limits and conditions of the Policy." For example, just as the special events endorsement is subject to the policy liability limits, Gulf contends, so is the endorsement subject to all other terms of the policy. Gulf asserts that claims arising from parades are covered to the same extent that any claim is covered, that is, subject to all of the terms of the policy.

Fuller responds that the policy does provide coverage under the facts of this case. The special events endorsement states that it is, "**Subject otherwise** to all terms, limits and conditions of the Policy." (emphasis added). Fuller distinguishes "subject to" from "subject otherwise to." Fuller explains that if the special events endorsement had been "subject to" all terms of the policy, then the special events endorsement would have been modified by the terms, limits and conditions of the policy. Fuller notes that the phrase "subject to" is used in this way in other parts of the policy. In contrast, Fuller explains, because the phrase "subject otherwise to" was used, the special events endorsement is modified only by the portions of the policy that the endorsement itself does not supersede. Fuller explains that this is so because "otherwise" means "in different circumstances." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 1598 (1961). Fuller concludes that the special endorsement should be read to supersede other policy provisions where necessary to provide coverage for the listed special events. In other words, the special events endorsement is subject to all provisions of the policy *except* those that conflict with any special event covered in the endorsement. Fuller argues that if the CGL policy is not clear in providing coverage for liabilities arising from the parade, the policy is at least ambiguous.

■ Whether a policy is ambiguous is a question of law. *General Am. Life Ins. Co.*

*v. Barrett,* 847 S.W.2d 125, 131 (Mo.App. 1993). An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions. *Krombach v. Mayflower Ins. Co.,* 827 S.W.2d 208, 210 (Mo. banc 1992). The use of the word "otherwise" creates such an uncertainty or indistinctness in this case; the language is reasonably open to both constructions advocated by the parties. While Gulf's argument appears to be persuasive initially, Fuller's focus on the word "otherwise" highlights the ambiguity in this policy. "Subject otherwise to" arguably means something different than "subject to," because every word in a contract is to be given meaning if possible. *Nichols v. Pendley,* 331 S.W.2d 673, 676 (Mo.App.1960). The fact that "subject to" was used elsewhere in the policy strengthens Fuller's argument that the word "otherwise" has a different meaning. While the policy does not simply state that the special events endorsement supersedes the automobile exception, the policy is at least ambiguous in that regard.

■ When policy language is ambiguous, it must be construed against the insurer. *Krombach,* 827 S.W.2d at 210. Because the CGL Policy is ambiguous, the language must be construed in favor of the insured. Fuller's injuries are covered by the CGL Policy.

Gulf asserts that if the Court finds ambiguity, the Court must attempt to harmonize the ambiguous sections. *Haggard Hauling & Rigging Co. v. Stonewall Ins. Co.,* 852 S.W.2d 396, 401 (Mo.App.1993). Reading the policy and the endorsement as a whole, Gulf contends that any possible ambiguity can be harmonized away. Gulf's argument disregards the validity of the interpretation that Fuller urges. Its plausibility is at least as great as that of Gulf's interpretation.

Gulf argues that this case is similar to *Killian v. State Farm Fire & Casualty Co.,* 903 S.W.2d 215 (Mo.App.1995), and *American States Ins. Co. v. Porterfield,* 844 S.W.2d 13 (Mo.App.1992). In *Killian,* the insureds allowed a young girl to ride on their moped at a party they hosted. The girl crashed and was injured. The parents sued the insureds alleging negligent supervision and negligent entrustment of the moped. The insureds confessed judgment but did not pay. The parents attempted to collect under the insureds' State Farm homeowner's policy. State Farm denied coverage. 903 S.W.2d at 217. The policy allowed coverage for bodily injury caused by an accident off the insured's property that was "caused by the activities of the insured." *Id.* The Killians argued that hosting a party and allowing a child to ride a moped was an "activity of the insured" that led to their daughter's injuries. The insureds' homeowner policy, however, also had an exclusion similar to the auto exclusion in the CGL Policy. The policy excluded coverage for "bodily injury" "arising out of the ownership, maintenance, use ... of a motor vehicle owned or operated by ... any insured." *Id.* at 218. The Missouri Court of Appeals, Western District, found no ambiguity in the policy and held the policy did not provide coverage. The court of appeals stated that the auto exclusion disallowed coverage for the accident because it involved an auto. *Id.*

Similarly, in *Porterfield,* a trailer broke loose from a truck and collided with the Scarborough's vehicle. 844 S.W.2d at 14. The Scarboroughs entered into a settlement agreement with Porterfield. Porterfield had a CGL Policy with American States Insurance Company. The policy contained an auto exclusion similar to the one in the present case. *Id.* American refused to pay the judgment and petitioned the court for a judgment stating that the accident was not covered by the American policy. The Scarboroughs argued that the accident was covered due to the negligent supervision and training of Porterfield's employees. *Id.* at 15. The Missouri Court of Appeals, Western District, found that "the injuries arose out of the use of the truck and not from the negligent supervision and therefore there is no coverage for any injuries arising out of the automobile accident." *Id.* at 16.

Gulf argues that this Court should find Fuller's injuries are not covered because, like

the injuries in *Killian* and *Porterfield,* her injuries arose from the use of an auto owned and operated by the insured. Gulf's argument in this respect is not supported by *Killian* or *Porterfield.* Although the insurance policies in both contained an auto exclusion similar to the one in the present case, the language of the policies was not ambiguous. *Killian,* 903 S.W.2d at 218; *Porterfield,* 844 S.W.2d at 15. Because the *Killian* and *Porterfield* policies were not ambiguous, there was no need for construction in those cases. For this reason, *Killian* and *Porterfield* are not persuasive.

### FULLER'S APPEAL

■ Section 537.065 provides in relevant part:

Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insured in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tortfeasor, neither he nor any person, firm or corporation claiming by or through him will levy execution ... except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tortfeasor for such damage....

Fuller cites *Cologna v. Farmers & Merchants Ins. Co.,* contending that a section 537.065 settlement need only be free from fraud and collusion to be enforceable. 785 S.W.2d 691, 701 (Mo.App.1990). Fuller asserts that there is no requirement that section 537.065 settlements be reasonable. In *Cologna,* the Missouri Court of Appeals, Southern District, after stating that the insured is free to make a "reasonable settlement," went on to say that "it could not fairly be said that the judgment in the wrongful death action was collusive or fraudulent...." *Id.* In *Whitehead v. Lakeside Hosp. Ass'n,* the parties settled pursuant to section 537.065, which the western district stated "is

a method of settlement that is valid if free of collusion or fraud." 844 S.W.2d 475, 480 (Mo.App.1992). Fuller interprets this language as requiring only that a settlement be free from fraud and collusion.

Gulf cites *Cologna* for the proposition that "an insurer's unjustified refusal to defend upon the ground that the claim is not covered by the policy relieves the insured from his contractual obligation not to settle and the insured is at liberty to make a *reasonable* settlement or compromise ...." (emphasis added). 785 S.W.2d at 701. *See also Whitehead,* 844 S.W.2d at 480. Gulf argues that this language imposes a reasonableness standard on courts when enforcing section 537.065 settlements. Gulf also argues that the settlement must be made in good faith. *Cologna,* 785 S.W.2d at 701.

No Missouri appellate court has yet directly addressed the reasonableness requirement for section 537.065 settlements. In *Cologna,* the court of appeals stated, with little discussion, that "an insurer's unjustified refusal to defend upon the ground that the claim is not covered by the policy relieves the insured from his contractual obligation not to settle and the insured is at liberty to make a reasonable settlement.... It is also said that to bind the insurer the settlement must be reasonable...." 785 S.W.2d at 701. Reasonableness of the settlement was not necessary, however, to the holding in *Cologna* because the court found the claim was barred by the doctrine of res judicata. *Id.* In *Whitehead,* the court of appeals cited *Cologna's* requirement that the settlement be reasonable, 844 S.W.2d at 480, although, as in *Cologna,* the matter was not at issue.

It is necessary now to decide whether reasonableness, along with fraud and collusion, should be a part of the analysis in determining the enforceability of section 537.065 settlement contracts. After considering the arguments of the parties and the authority of other jurisdictions, this Court determines that a reasonableness standard is appropriate in determining the enforceability of section 537.065 settlements. Requiring a settle-

ment to be reasonable strikes an appropriate balance between the interests of the insured and the interests of the insurer. In cases such as the present case, the insurer has refused to defend, leaving the insured to fend for itself. The insured, however, although not engaging in collusive conduct for fraudulent or deceitful purpose, may act in a self-interested way in an attempt to protect himself from personal liability. In *Steil v. Florida Physicians' Ins. Reciprocal,* the District Court of Appeals of Florida explained why courts should require settlements to be reasonable:

> The conduct of the insured can hardly be characterized as fraudulent simply because he stipulates to a large settlement figure in order to obtain his release from liability. He has little or nothing to lose because he will never be obligated to pay. As a consequence, the settlement of liability and damages may have very little relationship to the strength of the plaintiff's claim. Due to this problem, the ordinary standard of collusion or fraud is inappropriate. Thus, we hold ... a settlement may not be enforced against the carrier if it is unreasonable in amount or tainted by bad faith.

448 So.2d 589, 592 (Fla.Dist.Ct.App.1984) (citation omitted).

The test of whether the settlement amount is reasonable is what a reasonably prudent person in the position of the defendant would have settled for on the merits of the plaintiff's claim. *Miller v. Shugart,* 316 N.W.2d 729, 735 (Minn.1982). The determination involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial. *Id.* The burden of proving the reasonableness of the settlement contract is on the insurer, who has elected not to participate in the underlying case. This distributes among the parties the risks attendant to settlement.

■ Applying the analysis to the settlement contract at issue in this case, this Court notes that fraud is not at issue and Gulf has not carried its burden of proving that the settlement was obtained through collusion.

Gulf has, however, met its burden of proving that the settlement amount was unreasonable. The evidence was that Fuller's medical bills and lost wages totaled $12,072.79, approximately 1/2 of the amount of the settlement. Fuller testified regarding some permanency of the effects of the injury to her leg and ankle. At the settlement conference, Fuller's attorney made a $295,000 demand. Pacific's attorney offered $50,000 to settle. Fuller also demanded $50,000 in punitive damages. The attorney hired by Pacific to represent Noble estimated a probable verdict range between $50,000 and $65,000. He estimated the top jury verdict would be between $65,000 and $75,000. Upon the evidence adduced, this Court cannot say that the trial court abused its discretion in finding the settlement in this case to be unreasonable.

Fuller argues that this Court should not consider unaccepted offers and demands as evidence of the value of a case. Fuller, however, did not object to the evidence of offers and demands during the trial. Failing to make an objection to an issue at trial waives the issue on appeal. *Johnson v. Moore,* 931 S.W.2d 191, 195 (Mo.App.1996). In fact, Fuller mentioned the offers during her opening statement. She cannot complain for the first time on appeal when she failed to object to the use of the evidence at trial.

■ Finally, this Court must determine an appropriate process for disposition of a case in which the settlement agreement is judged to be unreasonable. There are two possibilities. First, the court, after holding an agreement unenforceable, could release the insurer from any liability. Alternatively, the trial court, acting as the finder of fact, could determine a reasonable settlement amount for which the insurer should be held liable. This Court concludes that the second of the possibilities is the more fair. This requires that the case be remanded. The question of what constitutes a reasonable settlement in this case would have been necessarily addressed, at least in part, by implication in the determination that the settlement amount was unreasonable. The question may, how-

ever, require further argument by the parties. Whether such argument is helpful in this case is left to the sound discretion of the trial court to determine on remand before making a finding of a reasonable settlement amount for which the insurer should be held liable.

In summary, the CGL Policy provides coverage for Fuller's injuries because it is ambiguous. The trial court did not abuse its discretion in finding the settlement amount of one million dollars to be unreasonable. The matter requires further proceedings to determine a reasonable settlement amount for which the insured should be held liable. The judgment of the trial court is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

HOLSTEIN, C.J., and PRICE and WHITE, JJ., concur.

ROBERTSON, J., dissents in separate opinion filed.

BENTON and LIMBAUGH, JJ., concur in opinion of ROBERTSON, J.

ROBERTSON, Judge, dissenting.

I respectfully dissent.

The majority opinion says that an ambiguous policy of insurance is construed against the insurer. That is true beyond serious dispute.

The majority opinion says that the policy under our review is ambiguous. The policy contains the following exception to its general liability coverage provisions.

This insurance does not apply to ...

g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any ... 'auto' owned or operated by ... any insured.

This language is not ambiguous. The majority does not claim otherwise (to the con-

trary). But the policy contains a special events endorsement.

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING SHALL BE INCLUDED AS THE TERMS AND CONDITIONS OF THIS POLICY:

SPECIAL EVENTS SHALL INCLUDE ... PARADES ...

\*　　\*　　\*　　\*　　\*　　\*

Subject otherwise to all the terms, limits and conditions of the Policy.

For the majority, the addition of the word "otherwise" between "subject" and "to" creates an ambiguity. This is because, the majority reasons, "otherwise" can mean "in different circumstances."

I disagree with the majority's finding that this policy is ambiguous. In this circumstance, "otherwise" means "in other ways." The World Book Dictionary 1472 (1988). When defined in a manner consistent with this common meaning and considering the intent of the policy read as a whole while reading the words in context, it is clear that the phrase "subject otherwise to" is intended to invoke the exceptions to the policy previously and unambiguously set out. The use of the word "otherwise" does not void those exceptions or render the meaning of the policy uncertain.

It takes diligent searching through a dictionary to find a non-scientific English word carrying a single meaning. The simple word "the" has nearly two thousand words devoted to its possible meanings, Webster's Third New International Dictionary 2368–9 (1976), and the single letter "a" has over five hundred words devoted to its possible uses and definitions. *Id.* at 1.

For one intent on finding ambiguity, the dictionary provides an ample basis for rendering every insurance contract meaningless in the face of injury or need. The simple phrase "subject otherwise to all terms of the policy" could mean "the person under the rule of the king [subject] in different circum-

stances [otherwise] included [to] only [all] the court's sessions [terms] during [of] the [the] conduct of public affairs [policy]." But we know better, understanding innately Wittgenstein's teaching that "the meaning of a word is its use in the language." L. Wittgenstein, *Philosophical Investigations*, 43.

With respect, the phrase "subject otherwise to" does not render this otherwise (in other respects) unambiguous insurance contract ambiguous. If this Court wishes to read the words of the policy in context and assign the words used in the policy the meaning normally associated with insurance policies, it will discover as did the court of appeals that the policy is not ambiguous. After all, communication in a language as rich in nuance as English is ever dependent on the context in which words are used. Otherwise (or else) we could not communicate at all.

I would declare the policy unambiguous as a matter of law and reverse the judgment of the trial court. Under my reading of the law and this insurance contract, I would not reach the Fuller appeal because the conclusion that the policy is clear denies that appeal of necessity.