**FERRELLGAS, L.P., Relator,**

**v.**

**The Honorable J.D. WILLIAMSON, Jr. Circuit Court of Jackson County Missouri at Kansas City, Respondent.**

**No. WD 57381.**

Missouri Court of Appeals,
Western District.

May 2, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Richard Earl McLeod, Jefferson City, for Relator.

Edward D. Robertson, Jr., David Robert Smith, Kansas City, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge JAMES M. SMART, Jr. and Judge EDWIN H. SMITH.

LAURA DENVIR STITH, Presiding Judge.

Relator Ferrellgas requests us to issue our writ prohibiting Respondent, The Honorable J.D. Williamson, Jr., from enforcing his order prohibiting Relator from obtaining discovery from the plaintiffs below as to the damages they suffered in the furnace explosion which forms the basis of this contribution action. Respondent found that, because Ferrellgas was not a party to the earlier personal injury and wrongful death suits or settlements against those alleged responsible for the

explosion, it could try the issues of liability and the reasonableness of the amount awarded as actual damages against the other tortfeasors, but that it was otherwise bound by the determination of damages in the earlier proceeding and therefore could not conduct discovery on the subject of the tort plaintiffs' damages.

Ferrellgas sought a writ of prohibition under which we would prohibit the Respondent from enforcing this order. We issued a preliminary writ of prohibition on July 9, 1999. We now make that writ permanent.[1]

## I. STATEMENT OF FACTS

In 1992, Jim and Sharon Augspurger were married. It was a second marriage for both parties. In December 1992, the Augspurgers' children and grandchildren from their previous marriages met at the Augspurgers' home in Arbela, Missouri to celebrate Christmas as a newly merged family. In the early morning hours on December 26, 1992, there was excess gas pressure in the Augspurgers' propane furnace, which permitted carbon monoxide to build up in the family home, killing both Jim and Sharon Augspurger. Two additional members of the family died as well, and others suffered severe coma-inducing brain injuries.

On September 10, 1993, the survivors of the accident ("the Augspurger Plaintiffs"), filed suit against a number of parties related to the propane furnace. Starting in May 1994, and continuing through to October 1995, they entered into settlement agreements with Dominion Manufacturing, the successor of the company that sold the wood stove system; Engineered Controls International, Inc., the successor of the second stage regulator; Lennox, the manufacturer of the propane furnace; MFA Oil Company, the Augspurgers' propane supplier; and the Augspurgers' home-

owner's insurance company, Cameron Mutual.

Later in 1995, the Augspurger Plaintiffs settled with the two remaining named Defendants—Augusta Investment Company, which sold the wood stove system, and Virginia Manufacturers, the parent company of Augusta ("the Wood Stove Defendants"). The settlement with the Wood Stove Defendants was made pursuant to Section 537.065 RSMo 1994. Under that settlement, the Wood Stove Defendants' primary insurer, Liberty Mutual, agreed to pay its full $1,000,000 policy limits. The Wood Stove Defendants also assigned all of their contribution and indemnity claims to the Augspurger Plaintiffs and agreed not to defend or present evidence at the Section 537.065 hearing on the Augspurger Plaintiffs' claims against them.

On November 22, 1994, the case was called for hearing before the trial court. No live witnesses were called. Instead, counsel for the Augspurger Plaintiffs gave a statement to the court as to the facts regarding the injuries and deaths, and as to the damages they claimed. Counsel also offered approximately 200 exhibits. Included among the exhibits were corporate documents, pictures, and videotapes of the type of stove in question, as well as depositions of certain plaintiffs, of certain representatives of defendants, and of medical and law enforcement personnel. Plaintiffs put on evidence as to medical expenses and lost earnings, and argued for an award of certain amounts in damages for each plaintiff, totaling $73,045,000.

As required by their Section 537.065 agreement, counsel for the Wood Stove Defendants appeared, but he stated to the court that "pursuant to [the Section 537.065] agreement we are required to be here and so we are here and understand that we are not permitted per the agreement to participate from a defensive standpoint and so we're here for that purpose

---

1. We commend counsel for both parties for their excellent briefing and argument of the

complex issues involved in this case.

only." Defense counsel thus offered no evidence or argument as to the merits of the claim or as to damages.

Following plaintiffs' counsel's statement and argument, the court entered judgment for the Augspurger Plaintiffs in the total amount of $30,000,000, or somewhat less than one-half of the amount they had requested. This was thus not entry of judgment on a settlement amount agreed to by the parties. The court determined damages, but did so based solely on evidence offered by the Augspurger Plaintiffs, since the Section 537.065 agreement precluded the Wood Stove Defendants from contesting this evidence or putting on any evidence of their own as to either liability or damages. The judge offset the prior settlements with the other defendants against the $30,000,000 judgment, resulting in a net judgment against the Wood Stove Defendants of $12,735,000.

The Wood Stove Defendants held excess insurance coverage through Federal Insurance Company (Federal) in the amount of $10,000,000, but Federal refused to pay these limits and denied coverage on the basis of an exclusion. The Augspurger Plaintiffs filed an equitable garnishment action against Federal. After a hearing, a special master found Federal's exclusion ambiguous and construed it against Federal, finding coverage. The special master also found that under *Gulf Insurance Co. v. Noble Broadcast*, 936 S.W.2d 810 (Mo. banc 1997), Federal was entitled to a hearing on the issue whether the amount of the $30,000,000 settlement was reasonable, and recommended to the court that it hold a hearing on that issue and, if it found the amount not reasonable, that it should determine what amount would be reasonable and enter judgment in that amount. Before such a hearing on reasonableness could be held, Federal agreed to settle the garnishment action on their $10,000,000 in coverage by paying the Augspurger Plaintiffs $9,000,000 and assigning to them Federal's subrogation and contribution rights against any other tortfeasor.

On December 23, 1997, the Augspurger Plaintiffs filed a personal injury and wrongful death suit against Ferrellgas, L.P., which they alleged had installed the gas regulator on the furnace and supplied propane to the Augspurgers. In response, Ferrellgas filed a motion to dismiss, asserting that the plaintiffs failed to file their claim within the three-year statute of limitations for filing a wrongful death action set forth in Section 537.100. On September 21, 1998, the Augspurger Plaintiffs dismissed their case against Ferrellgas, without prejudice.

On March 27, 1998, the Augspurger Plaintiffs, in their role as assignee of Federal's contribution rights, and the Wood Stove Defendants (collectively referred to hereafter as "the Contribution Plaintiffs"), filed a contribution and indemnity action against Ferrellgas seeking reimbursement for sums paid on behalf of the Wood Stove Defendants to the Augspurger Plaintiffs – in other words, to themselves. Ferrellgas filed a motion to depose the medical experts and witnesses, and to obtain new medical examinations on the Augspurger Plaintiffs, in order to determine the extent of their injuries and damages. The Contribution Plaintiffs moved to quash the deposition and discovery notices, or, in the alternative, for a protective order; asserting that Ferrellgas could not conduct discovery as to the amount of the Augspurger Plaintiffs' damages. They argued that reasonableness had to be determined based on the information available to the Wood Stove Defendants in the initial suit at the time of the initial settlement, and their evaluation of the subjective risks of going forward. The Respondent trial judge overruled the motion to quash, but sustained the Contribution Plaintiffs' alternative motion for protective order, thereby denying Ferrellgas' request to conduct discovery on the issue of damages.

Ferrellgas filed a writ of prohibition. This Court entered its preliminary writ on July 9, 1999. We now make that writ permanent.

## II. STANDARD FOR ISSUANCE OF WRIT OF PROHIBITION

■ Interlocutory review of a trial court ruling by writ of prohibition should occur only in extraordinary circumstances. *State ex rel. Chassaing v. Mummert,* 887 S.W.2d 573, 577 (Mo. banc 1994). Our Supreme Court has recognized three situations in which writs of prohibition will issue. *Id.See also, State ex rel. Noranda Aluminum, Inc. v. Rains,* 706 S.W.2d 861, 862–63 (Mo. banc 1986). First, where there is a usurpation of judicial power because the trial court lacks either personal or subject matter jurisdiction. Second, to remedy a clear excess of jurisdiction or abuse of discretion such that the lower court lacks the power to act as contemplated. Third:

> prohibition will issue in those very limited situations when an "absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order," *State ex rel. Richardson v. Randall,* 660 S.W.2d 699, 701 (Mo. banc 1983), or where there is an important question of law decided erroneously that would otherwise escape review on appeal **and** the aggrieved party may suffer considerable hardship and expense as a consequence of the erroneous decision.

*State ex rel. Riverside Joint Venture v. Missouri Gaming Comm'n,* 969 S.W.2d 218, 221 (Mo. banc 1998) (emphasis in original).

■ As we noted in*State ex rel. Stolfa v. Ely,* 875 S.W.2d 579, 581 (Mo.App. W.D. 1994), there is a tendency toward liberality in discovery and the trial court's discretion to deny discovery is commensurately more limited. The denial of discovery matters has thus been held to fall within the third category of reviewability under a writ of prohibition because, although a party may in fact be prejudiced by the court's denial, it is nearly impossible to show on appeal how the denied information could have affected and prejudiced the result of the trial. *State ex rel. Collins v. Edwards,* 652 S.W.2d 98, 102 (Mo. banc 1983); *Stolfa,* 875 S.W.2d at 581. *See also State ex rel. Gray v. O'Leary,* 602 S.W.2d 473, 477–78 (Mo.App. W.D.1980). Therefore, because the denial of Ferrellgas' discovery request may cause it to suffer considerable hardship and expense which may be uncorrectable on appeal, we are justified in entertaining the writ for purposes of judicial economy. *Id.; Noranda,* 706 S.W.2d at 862–63.

## III. RIGHT OF NON–PARTY TO TRY LIABILITY AND DAMAGES IN SUIT FOR CONTRIBUTION

The issue before this Court is a narrow one: Did the trial court err in ruling that Relator Ferrellgas was not permitted to conduct discovery as to the amount of the Augspurger Plaintiffs' damages? Whether such discovery is permitted is determined by whether Ferrellgas, in this action against it for contribution, is bound by the determination of damages made in the Section 537.065 hearing in the suit filed by the Augspurger Plaintiffs against the Wood Stove Defendants, unless such damages are determined to be unreasonable, or whether Ferrellgas has the right to try the issue of the amount of actual damages in this contribution action.

Ferrellgas argues that it has a right to discovery on the issue of damages and to try that issue in this contribution action, since it was a stranger to the first suit and should not be bound by the determinations therein. The Contribution Plaintiffs argue that Ferrellgas should not be permitted to conduct discovery on this issue because it is bound by the determination of damages in the initial action except insofar as it shows that the damages award was unreasonable. Moreover, it argues, reasonableness must be determined from the point of view of the Wood Stove Defendants at the time of the initial settlement, not from the point of view of Ferrellgas, and thus there is no need for or right to additional discovery by Ferrellgas. And, they argue, it

would be unfair to the injured Augspurger Plaintiffs, who have already litigated and won their claim against the Wood Stove Defendants/Contribution Plaintiffs, to subject them to additional discovery by the Contribution Defendant, Ferrellgas. Rather, Ferrellgas should only be permitted to litigate liability and whether the amount of the settlement was reasonable from the point of view of the Wood Stove Defendants as of the time of entry of judgment in the Section 537.065 hearing.

The court below agreed with the Contribution Plaintiffs' argument, and entered an order precluding Ferrellgas from conducting discovery as to the amount of the injured parties' – that is, the Augspurger Plaintiffs'—damages. We note that, uniquely in this case, due to the fact that the Augspurger Plaintiffs' were assigned Federal's and the Wood Stove Defendants' contribution rights, and thus the Augspurger Plaintiffs are also the Contribution Plaintiffs, this means that Ferrellgas was precluded from inquiring of the Contribution Plaintiffs about the extent of their own damages.

For the reasons stated below, we find that the trial court abused its authority in precluding the discovery sought by Relator Ferrellgas. The Contribution Plaintiffs' argument that Ferrellgas is not entitled to discovery on the issue of damages is based on our Supreme Court's decision in *Gulf Insurance Co. v. Noble Broadcast*, 936 S.W.2d 810 (Mo. banc 1997). As Contribution Plaintiffs note, in *Gulf Insurance* the Supreme Court held that a defendant is entitled to enter into a Section 537.065 settlement with the plaintiff if the defendant's insurer refuses to defend, as occurred here in regard to the Wood Stove Defendants' insurer. *Gulf Insurance* further held that it was proper for the plaintiff to then be permitted to proceed against the insurer in a garnishment action. And, if the court in the garnishment action finds that the insurer breached its obligation to defend, the insurer will be liable to the plaintiff and has no right to

relitigate liability or damages issues since it could and should have litigated them in the initial tort action if it had not wrongfully refused to defend. *Id.* at 815. However, it can litigate the issue whether the judgment in the Section 537.065 suit was the result of fraud and collusion, and can litigate the issue whether the settlement was reasonable. As *Gulf Insurance* stated, in litigating this issue:

> The test of whether the settlement amount is reasonable is what a reasonably prudent person **in the position of the defendant** would have settled for on the merits of the plaintiff's claim. [citation omitted]. The determination involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial. [citation omitted]. The burden of proving the reasonableness of the settlement contract is on **the insurer, who has elected not to participate in the underlying case.** This distributes among the parties the risks attendant to settlement.

*Id.* at 816 (emphasis added).

The Contribution Plaintiffs argue that the analysis in *Gulf Insurance* is directly applicable here. Like the insurer in *Gulf Insurance*, they note, Ferrellgas was not a party to the underlying case or settlement. Hence, they argue, like the insurer in *Gulf Insurance*, Ferrellgas is entitled to litigate the reasonableness of the damages determined in the underlying case from the point of view of a reasonable person in defendant's position, and presumably to try to show the judgment was the result of fraud or collusion. But, the Contribution Plaintiffs argue, *Gulf Insurance* bars Ferrellgas from relitigating the issue of the amount of damages itself, apart from the question whether they were reasonable.

And, since reasonableness is dependant on how the risks of liability and damages would have appeared to a reasonable defendant, Contribution Plaintiffs argue, the determination of reasonableness should be made based on the facts known to the

settling Wood Stove Defendants at the time of the settlement. If the amount of the settlement appeared reasonable in light of that knowledge, then the settlement was reasonable. Therefore, they argue, there is no need for or right to further discovery by Ferrellgas as to what the injured parties' damages actually were. The only real issue is what the Augspurger Plaintiffs' damages would have appeared to be to a reasonable defendant at the time of the settlement. Hence, Contribution Plaintiffs argue, the trial court properly refused to permit Ferrellgas to engage in discovery as to the actual damages suffered by the injured Augspurger Plaintiffs.

We disagree with the Contribution Plaintiffs' analysis of *Gulf Insurance,* and with their attempt to apply it to the current situation. *Gulf Insurance* dealt solely with the procedure to be followed in determining the liability of an insurer who has wrongfully refused to defend its insured and the insured has then entered into a Section 537.065 settlement, as permitted by Missouri law. In such a case, as *Gulf Insurance* explicitly notes, the insurer has "elected not to participate in the underlying case," 936 S.W.2d at 816, and as a consequence is precluded from relitigating damage and liability issues determined in the underlying action. *Id.*

Here, Ferrellgas did not *elect* to not participate in the underlying case. Rather, Ferrellgas did not participate because it was not made a party to the case and had not been sued by any of the parties to it. *Gulf Insurance* does not anywhere suggest that all persons not parties to the trial in a Section 537.065 case are bound by any or all of its determinations, and can only relitigate the issue of reasonableness. It says only that the **insurer** who wrongfully refused to defend is so bound. Thus, here, since Federal Insurance Company was found to have wrongfully refused to defend or provide coverage, it was bound by the liability and damage determinations in the underlying case, and could litigate only the issues of collusion, fraud, and

reasonableness of the amount of the judgment.

Ferrellgas does not stand in the shoes of Federal, however. Indeed, it is the Augspurger Plaintiffs, not Ferrellgas, who settled with Federal and have been assigned its contribution rights. Ferrellgas has no relationship to the insurer. It is simply another company alleged to also be a tortfeasor, partially responsible for the injuries to the Augspurger Plaintiffs. Ferrellgas had neither the right nor the obligation to try the underlying suit, and none of the principles set out in *Gulf Insurance* suggest it should be bound by the underlying litigation, or that its discovery and defensive rights should be limited to the issue of reasonableness of the damages awarded in an action to which it was neither a party nor in privity with a party. Indeed, the Contribution Plaintiffs themselves necessarily recognize that *Gulf Insurance* could not fully apply to Ferrellgas, for they recognize that, unlike an insurer who has refused to defend, Ferrellgas has a due process right to litigate its liability, since it was not a party to the underlying case and thus cannot be bound by the liability determinations therein since it had no opportunity to litigate them.

■ The rights of Ferrellgas and of the Contribution Plaintiffs are thus not determined by the law set out in *Gulf Insurance* relative to suit by an injured party against a defendant's insurer. Rather, those rights are determined by Missouri law regarding contribution among joint tortfeasors.

Contribution among joint tortfeasors was first adopted in Missouri in *Missouri Pacific R.R. Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978). *Whitehead & Kales* dealt with contribution among joint tortfeasors who were both sued in the same case by plaintiff and who became jointly and severally liable. Since each had been a party to the plaintiff's suit, each had already had its day in court on the issues of liability and damages.

Contribution rights thus turned on the jury's determination of the relative fault of each defendant, and the court stated that "the jury should award the third party plaintiff such proportion of the total sum paid by it to plaintiff as corresponds to the degree of fault of the third party defendant." *Whitehead & Kales*, 566 S.W.2d at 472.

*Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727 (Mo. banc 1982), concerned a situation not addressed in *Whitehead & Kales* – how to determine contribution rights in a case in which the contribution defendant was not a party to the initial action by plaintiff. After *Safeway Stores* was found liable to the tort plaintiff, it brought a separate contribution action against the City of Raytown, alleging Raytown was liable for all or part of the judgment against Safeway, according to its relative fault. Raytown argued that it was unfair for it to be sued by Safeway for contribution, that it was up to Safeway to bring Raytown into the original suit as a third-party defendant, and where, as there, it failed to do so, it should be barred from seeking contribution. Otherwise, Raytown argued, it would be bound by the judgment in the original action without being given an opportunity to defend. 633 S.W.2d at 732.

*Safeway Stores* rejected this argument precisely because it found that the defendant in the contribution action would *not* be bound by the discovery or the determination of liability and damages in the original suit. Therefore, *Safeway Stores* held, the contribution defendant would still have its day in court. As the Court stated:

> The liability of respondents is not predetermined as contended. Appellant concedes **that respondents have the right to perform discovery,** and to present evidence to refute Safeway's charges including all defenses which would have been available in the original action. In this action **they are entitled to a full opportunity to defend against the present allegations of their fault and the**

**amount of damages which the injured party suffered** . . . . and in no event may Safeway recover more than the amount of the injured plaintiff's award less Safeway's own proportionate liability. Because no determination adverse to the respondents' interests is made by the original judgment, their rights to due process are not violated by the lack of notice or opportunity to be heard in the principle action.

*Safeway Stores*, 633 S.W.2d at 732 (emphasis added).

■ On its face, *Safeway Stores* would appear to be dispositive of this case, for it clearly states that a party sued for contribution in a separate action by the defendant in the underlying action has a right to litigate both liability and the amount of damages, not just the reasonableness of the damages awarded in the underlying action. *Ipso facto*, the contribution defendant would therefore have a right to discovery on those issues, and *Safeway Stores* specifically so recognizes. Moreover, as an appellate court, we are bound to follow the latest decision of our Supreme Court on this issue. Mo CONST. ART. V, Sec. 2 (1945); *Reynolds v. State*, 939 S.W.2d 451, 454 (Mo.App. W.D.1996).

Contribution Plaintiffs suggest that *Safeway Stores* is not applicable, however, because it followed the approach taken in the Uniform Contribution Among Tortfeasors Act, Sec. 1(d) (1955) (Contribution Act), as approved in *Whitehead & Kales*, and that a different result would obtain in that suit today, in light of Missouri's adoption of the approach taken by the Uniform Comparative Fault Act, Sec. 4(b) (1977) ("Comparative Fault Act") in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983). *Gustafson* noted that the decisions of Missouri courts in the years since adoption of contribution among tortfeasors in *Whitehead & Kales* had left the bar with little practical guidance as to the basis, extent and consequences of the principles adopted therein. *Gustafson* sought to clarify the law by holding that, in applying compara-

tive fault principles, Missouri courts should follow the principles set out in the Comparative Fault Act "to the extent possible." *Gustafson,* 661 S.W.2d at 15. Contribution Plaintiffs suggest that this means that prior decisions interpreting contribution and comparative fault in a manner inconsistent with the Comparative Fault Act were no longer to be followed. Therefore, they argue, *Safeway Stores* was no longer good law.

■ We disagree. First, nothing in *Gustafson* suggests *Safeway Stores* is no longer good law. It would be surprising indeed if the Supreme Court were to overrule such important precedent as *Whitehead & Kales* and *Safeway Stores* by implication in this manner. Rather, it makes sense that prior Supreme Court precedent would continue to govern, and would not be overruled by implication by adoption of a model act as the common law of Missouri. We believe that, by saying that the Comparative Fault Act should be followed "to the extent possible," the Court was saying that it should be followed to the extent not inconsistent with existing Missouri law, both statutory law and common law. Since the doctrines of humanitarian negligence and last clear chance were inconsistent with the Comparative Fault Act and with the principles of comparative fault, *Gustafson* made clear that they were no longer the law of Missouri. 661 S.W.2d at 14–15. However, nothing in *Gustafson* suggested that *Safeway Stores* was overruled.

This analysis is confirmed by the Supreme Court's later decision in *Lippard v. Houdaille Industries, Inc.,* 715 S.W.2d 491 (Mo. banc 1986), holding:

There has been confusion because annotated sections of the Uniform Comparative Fault Act were appended to the *Gustafson* opinion, as a guide to proceedings in comparative fault cases. It was not the purpose of *Gustafson* to enact that model act as a virtual statute of the state of Missouri, to establish substantive principles controlling cases

not then before the Court. Much less was there any purpose of giving special authority to the annotations and commissioners' comments. The direction in the opinion was simply to apply the procedures of the Uniform Comparative Fault Act "insofar as possible."

*Id.* at 492–93 (superseded by statute on other grounds as stated in *Lester v. Sayles,* 850 S.W.2d 858 (Mo. banc 1993)).

Although the Comparative Fault Act provides for application of comparative fault principles to strict liability cases, *Lippard* then held that such principles would not be applied in Missouri strict liability cases, just as contributory negligence had never been a bar to recovery in strict liability in Missouri. *Id.* at 493. Analogously, to the extent that the Comparative Fault Act was inconsistent with *Safeway Stores,* under the approach taken in *Lippard,* it is the Comparative Fault Act, not the standing Missouri Supreme Court decision in *Safeway Stores,* that must give way.

And, indeed, the Eastern District of this Court applied *Safeway Stores* in *Neurological Medicine, Inc. v. General American Life Ins. Co.,* 921 S.W.2d 64 (Mo.App. E.D. 1996). While, as Contribution Plaintiffs note, the holding of that case involved only the issue of the right to relitigate liability in a contribution action, it specifically recognized the continued viability of *Safeway Stores,* quoted *Safeway Stores'* holding that the contribution defendant may litigate both liability and the amount of damages, and relied on *Safeway Stores* as the basis for its decision. It is our view that *Safeway Stores* is still good law.

Even were we to agree that the principles announced in *Safeway Stores* must give way to inconsistencies between it and the Comparative Fault Act, however, we would not find that *Safeway Stores* is no longer good law, for we do not believe that it and the Comparative Fault Act are inconsistent in their approaches to discovery on the issue presented here. The Contri-

bution Plaintiffs' arguments to the contrary appear to be based, at least in part, on a lack of distinction between the principles governing contribution to a judgment, and those governing contribution to a settlement. Thus, as authority for their argument to the contrary, the Contribution Plaintiffs cite to Section 4 of the Comparative Fault Act, which states that:

> (b) Contribution is available to a person who enters into a settlement with a claimant only (1) if the liability of the person against whom contribution is sought has been extinguished and (2) to the extent that the amount paid in settlement was reasonable.

UNIF. COMPARATIVE FAULT ACT, Sec. 4(b) (1977).

This section deals with the principles governing the right to obtain contribution to a *settlement*, however, not those governing the right to obtain contribution to a *judgment*. Contribution to a *judgment* is the issue with which *Safeway Stores, Whitehead & Kales, Lippard*, and the other cases cited above were concerned. Nothing in Section 4 of the Comparative Fault Act suggests that discovery on the issue of damages and the right to litigate the amount of damages is not permissible in the case of a judgment. It does not directly address this issue at all. In fact, the fact that the Comparative Fault Act specifically provides in Section 4 that contribution to a settlement shall be based on extinguishment of liability and the reasonableness of the amount paid, but makes no similar provision in the case of contribution to a judgment, suggests that the drafters did not intend for the same rule to apply to judgments.

At least some commentators have so interpreted the Comparative Fault Act. Thus, as one comparative fault treatise states:

> [B]ecause the Act generally precludes allocation of fault to nonparties, resolution of the plaintiff's action would not have included an assessment of an unjoined tortfeasor's relative fault. Consequently, an award of contribution against a party not joined to the plaintiff's original action requires a separate, independent allocation of fault in the contribution action.

> . . . .

> A problem arises, however, if the judgment in the plaintiff's original action conflicts with the judgment in the contribution action. Inconsistency between the two judgments can arise from two sources: the plaintiff's overall damage figure and the parties' proportionate shares of fault. Collateral estoppel would bind the plaintiff and the original defendants to the plaintiff's original overall damages figure. *The contribution defendant would therefore benefit from that figure, to the extent that it is lower than the figure found in the contribution action. At the same time, the contribution defendant, as a nonparty to the plaintiff's original action, would not be bound by the original damages figure and thus could take advantage of any lower figure found in the contribution action.*

David C. Sobelsohn, *The Uniform Comparative Fault Act, in* 3 COMPARATIVE NEGLIGENCE Sec. 19.10[6][d] at 19–39 (Arthur Best ed.1999) (emphasis added).

This is, of course, also the approach taken in *Safeway Stores*. Under this approach, if the Contribution Plaintiffs are seeking contribution to a judgment, the contribution defendant – here, Ferrellgas – is not bound by the determination of either liability or damages in the original action, and these issues can be litigated by it, for the first time, in the contribution suit, subject to an upper limit of the damages awarded in the initial action to the extent they were reasonable.

The above discussion presupposes that what is at issue here is a judgment. The parties take the position that the payment as to which contribution is sought has attributes of both a judgment and a settlement, but appear to suggest that we need

not resolve which it is in order to determine this writ in their favor. We agree that this action has attributes of both a suit for contribution to a judgment and a suit for contribution to a settlement. Thus, the Augspurger Plaintiffs sued the Wood Stove Defendants and proceeded to judgment against them in the circuit court. While the trial and judgment were based on an agreement reached between the plaintiffs and defendants therein pursuant to a Section 537.065 settlement, the trial court did not merely enter judgment on a settlement reached by the parties. To the contrary, he held a hearing at which a summary of the facts supporting liability were argued to him, and at which substantial documentary evidence as well was presented on the issue of damages. He then entered a judgment, based on the evidence, and in an amount less than requested by the Augspurger Plaintiffs, and the latter then filed a garnishment action against Federal as they would do upon entry of a judgment in any tort suit. But, as the special master noted in determining that Federal had a right to try the issue of the reasonableness of the award, the judgment still retained many characteristics of a consent judgment or settlement, in that the Wood Stove Defendants, pursuant to their agreement with the Augspurger Plaintiffs, presented no evidence and did not contest either liability or damages.

While the fact that the judge actually made an independent determination of damages, albeit based on evidence presented only by one party, gives the ruling more semblance to a judgment than to a settlement, we need not finally resolve this issue. For, we determine that, even were we to consider the underlying ruling should be governed by the rules governing settlements rather than those governing judgments, Ferrellgas would still be entitled to discovery as to the Augspurger Plaintiffs' damages.

Assuming it is contribution to a settlement that is at issue here, this is still an independent suit for contribution brought by the Augspurger Plaintiffs in their capacity as assignees of the contribution rights of the Wood Stove Defendants, seeking contribution from a person not a party to the original lawsuit or to the settlement. Missouri law permits them to seek contribution to such a settlement.

Thus, in *Stephenson v. McClure*, 606 S.W.2d 208, 212–13 (Mo.App. S.D.1980), the court held that a contribution plaintiff is not entitled to invoke collateral estoppel principles against the contribution defendant in seeking contribution. To the contrary, it held, the contribution defendant is entitled to its day in court on liability and damage issues, just as the contribution plaintiff had an opportunity to try those issues previously, or could have had the opportunity to do so had it chosen not to settle. Indeed, this is the basis on which *Stephenson* held that it was fair and just to permit the original defendant to seek contribution from a person not sued by the plaintiff in the initial action, stating:

> An argument, most compelling to those accustomed to the individualism of the past practice, is that one tortfeasor should not be permitted by his own action to involve another alleged tortfeasor in a settlement. But, *the fundamental right of the non-settling alleged joint tortfeasor to contest his liability and the extent of the plaintiff's damages can be preserved.*

*Stephenson*, 606 S.W.2d at 212 (emphasis added).

*Stephenson* held that the rights of the non-settling tortfeasor were preserved precisely because the contribution defendant would not be prejudiced by the fact that the initial suit ended in settlement rather than in a judgment, since it would be permitted to litigate liability and damages in the contribution action. In support, it cited to Prosser for the principle that:

> "it is almost invariably held that one who settles without judgment can recover contribution. It is usually held, however, that in the contribution suit such a

compromiser must sustain the burden of proof, not only as to his own liability to the original plaintiff, but also as to the amount of the damages and the reasonableness of the settlement." Prosser on Torts, S. 47, p. 277.

*Stephenson,* 606 S.W.2d at 212. *See also* PROSSER AND KEETON ON TORTS *Sec.* 50, at 339 (5th ed.1984).

*Stephenson* thus holds that the contribution defendant is entitled to determine the amount of the injured party's damages, as well as the reasonableness of the settlement. And, if the contribution defendant is to litigate damages, clearly it is entitled to discovery as to damages as well.

We nonetheless note that in holding that a contribution defendant can contest the amount of damages separate and apart from contesting the reasonableness of those damages, *Stephenson* appears to go further than does the Comparative Fault Act. As noted above, Section 4 of the Comparative Fault Act states:

(b) Contribution is available to a person who enters into a settlement with a claimant only (1) if the liability of the person against whom contribution is sought has been extinguished and (2) to the extent that the amount paid in settlement was reasonable.

UNIF. COMPARATIVE FAULT ACT, Sec. 4(b) (1977).[2] Thus, the Act appears to make the ultimate issue the reasonableness of the settlement, and does not separately set out the right to contest actual damages apart from trying the issue of reasonableness. However, it is a leap of logic to suggest that this means that the amount of actual damages is irrelevant and that no discovery can be had as to them in the contribution action except based on review of the evidence admitted by the *plaintiffs* in the underlying tort suit. Nothing in the

Comparative Fault Act or in any of the cases cited by Contribution Plaintiffs states that such discovery as to actual damages is not properly a part of the reasonableness determination. Contribution Plaintiffs base their argument that such discovery not be had instead on their reasoning that, since in the garnishment action against Federal and in the garnishment action in *Gulf Insurance* the issue was the reasonableness of the settlement from the point of view of the settling defendant at the time of the Section 537.065 settlement and judgment, that should be the only reasonableness issue in this suit for contribution too.

■ We find two flaws in this approach. First, even in the case of a garnishment action against an insurer, the insurer is entitled to the discovery necessary to determine whether the damages awarded were the product of collusion and whether they would be reasonable from the point of view of a *reasonably prudent defendant. Gulf Insurance,* 936 S.W.2d at 816. The fact that the trial court awarded damages is not dispositive of this issue, for he did so based on one-sided evidence not contested by defendant, not based on the type of cross-examination and presentation of contrary evidence which would have been offered if a Section 537.065 proceeding were not occurring. *Cf. Ryan v. Ford,* 16 S.W.3d 644 (Mo.App. W.D.2000) (reasonableness determination of settlement not dispositive of later malpractice determination since it was based only on the evidence presented by the attorneys who allegedly committed malpractice).

In other words, *Gulf Insurance* appears to recognize that what the actual defendant may have settled for may have been reasonable from his point of view, but may not have been reasonable from the point of view of a more prudent defendant, who

---

**2.** The Restatement (Second) of Torts Section 886A (1977), also provides that a settling tortfeasor may obtain contribution from other tortfeasors once the claim of the original defendant is no longer outstanding, but comment d states that this right is limited by a requirement that the settling defendant show that the amount paid in settlement was reasonable, and that the reasonableness of the settlement is always open to inquiry in the contribution suit. RESTATEMENT (SECOND) OF TORTS, Sec. 886A cmt. d (1977).

was not pushed to settle by the refusal of the insurer to defend, and that the court is to consider what a reasonably prudent defendant would have settled for in determining reasonableness. To the extent that Contribution Plaintiffs argue that an insurer must simply accept a plaintiff's offered evidence of damages and any limited discovery by the settling defendant, however inadequate from the point of view of a reasonably prudent defendant, they are therefore wrong. Discovery would have to be permitted on the issue of actual damages prior to such a reasonableness hearing in order to discover what a reasonably prudent defendant would have settled for.

Second, as we have previously discussed, this action is different in kind than a garnishment action against an insurer who has improperly refused to defend. It is an independent action against an unrelated third party who is alleged to also be a tortfeasor. The contribution defendant thus does not stand in the shoes of the original defendant, as the insurer does for liability and damage purposes in a garnishment action in which the issues are limited to coverage and the reasonableness of the settlement. Here, as *Stephenson* notes, Ferrellgas is not subject to collateral estoppel and is entitled to try both liability and damage issues. In so doing, it necessarily must be permitted to conduct discovery into what those damages are, for only in that way can it determine whether the settlement was in fact reasonable.

This approach also makes common sense. If the contribution defendant were to be bound by the payment of damages by the initial defendant, then it would encourage plaintiffs to seek out the weakest or least well-represented defendant and enter into a settlement or obtain a Section 537.065 judgment that appeared reasonable because the defendant had engaged in little or no discovery as to damages by the time of settlement. A court might later find that it was reasonable for that defendant to settle for the amount agreed upon at that time, without further discovery, in light of the potential cost and time delay which would have resulted from further discovery, in light of the size of the settlement, in light of liability concerns, as well as concerns about bad publicity, cash flow, and so forth, even though, had further discovery in fact been done, defendant might have discovered that damages were less than had been claimed.

We do not by any means intend to suggest that this is what occurred here. On the record before us, it appears clear that the reason that Ferrellgas was not sued initially was that discovery did not reveal its alleged role in the accident until after the initial lawsuit, not because of a strategy decision to sue a weaker defendant. Moreover, the Augspurger Plaintiffs went far beyond what is done in the case of most Section 537.065 settlements. They could have simply obtained a judgment based on the settlement, and then tried the issue of reasonableness of the settlement amount only if that issue were contested in the garnishment action. Instead, they presented hundreds of exhibits on the issue of damages to the Section 537.065 court, so that the judge therein would have an evidentiary basis on which to enter a damage award. These factors no doubt encouraged Federal Insurance to enter into a settlement with the Augspurger Plaintiffs once the master found that Federal had wrongly refused to defend the initial action, for they would have gone far toward showing that the settlement was reasonable from the point of view of Federal's insureds, the Wood Stove Defendants. Nothing in the record suggests that the damages were inflated.

But, on the other hand, that is the very point made by Ferrellgas – that they have not had an opportunity to put evidence in the record which might show that the damage claims are excessive, or that the injuries were less than claimed. They say that they should not be bound by what appeared reasonable to the settling defendants years ago, but by what a reasonable defendant in its own position would settle

for, and that necessarily includes proof of the amount of the damages actually suffered by the plaintiffs, for the amount of those damages would be a key factor in determining what amount of money would be reasonable to pay in settlement. Indeed, it .has been noted that the reasonableness determination in a contribution action is unlike the reasonableness determination made by some states when reducing liability by the fault of a settling tortfeasor, for in a contribution action "a settlement's reasonableness becomes relevant only in the context of deciding the fair amount a nonparty to the settlement should be compelled to contribute to that settlement. In that context, the court should instruct the jury to evaluate the settlement from the nonsettling party's point of view." David C. Sobelsohn, *The Uniform Comparative Fault Act, in* 3 COMPARATIVE NEGLIGENCE Sec. 19.10[6][d] at 19–39 (Arthur Best ed.1999). The treatise goes on to note that "What counts is not the settling tortfeasor's exposure to liability, but the exposure of the nonsettling tortfeasor." *Id.* And, in making the determination of what is reasonable for it to pay, the contribution defendant necessarily needs to determine what damages plaintiffs have in fact experienced, not merely what the original Wood Stove Defendants thought was reasonable at the time of the underlying settlement.

Contribution Plaintiffs argue that adoption of this rule is bad public policy because it would subject the injured plaintiffs to further discovery and stress after they have already tried and won their lawsuit against the party they sued. They had no obligation to sue all potentially liable parties, and should not be dragged into a contribution action once they have already tried their lawsuit against their chosen defendant. Yet, they fear that this is what will result if we permit discovery as to plaintiffs' actual damages – such discovery will be largely duplicative of existing discovery, and might subject them to harassment.

While we are mindful of the concerns raised by Contribution Plaintiffs, we do not believe that they provide a reason for overruling *Safeway Stores* or *Stephenson* and the approach taken therein. In this particular case, we note that the injured parties – the Augspurger Plaintiffs – have been assigned the rights of the Wood Stove Defendants and Federal, and are actually prosecuting the action, and that any amounts they obtain in contribution from Ferrellgas will in fact become additional recovery to them as a result of those assignments. Thus, no inequity would result should they be subjected to additional necessary discovery. In addition, we note that counsel for Ferrellgas agreed that the plaintiffs herein would be entitled to seek a protective order to prevent duplicative or harassing discovery. Such an order would, in any event, be available in order to prevent abusive discovery under Rule 56.01, which provides, for instance, that the trial court can order "that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters." Rule 56.01(c).

For all of these reasons, we determine that Relator Ferrellgas is entitled to discovery as to the injured parties' actual damages, and that the court below abused its discretion in entering an order precluding it from undertaking such discovery. As such, we make our writ permanent and direct Respondent to vacate its order precluding such discovery and to proceed in a manner consistent with this opinion.

Judges JAMES M. SMART, Jr. and EDWIN H. SMITH concur.