STROUT REALTY, INC., Plaintiff,

v.

Salóme BENSON, Defendant-Respondent,

and

Frank Bachelier, Defendant (Cross-Claimant)- Appellant.

No. 13783.

Missouri Court of Appeals, Southern District, Division One.

Oct. 24, 1985.

W. Gary Drover, Camdenton, for defendant-respondent.

B. Douglas Varner, Lake Ozark, for defendant (cross-claimant)-appellant.

TITUS, Presiding Judge.

This interpleader action (Rule 52.07)[1] was instituted by Strout Realty, Inc. (Strout) against Salome Benson (Benson) and Frank Bachelier (Bachelier) to determine which defendant was entitled to the $13,000 earnest money Benson had deposited with Strout when the realtor, acting as agent for seller Bachelier, obtained from buyer Benson a signed "Purchase Offer and Deposit" by which Benson offered to purchase certain real estate owned by Bachelier. After a trial to the court, it entered judgment awarding the earnest money to Benson and Bachelier appealed.

The "Purchase Offer and Deposit Receipt" form was signed by Benson and Bachelier in the latter part of October 1982, thus making it a contract. Inter alia, the contract provided "The seller shall, upon payment of the purchase price, convey the property ... free and clear of all liens and encumbrances except as follows: NONE." According to the written agreement the total sale-purchase price of $133,000 was to be paid (1) $13,000 earnest money, (2) $37,000 on closing and (3) the $89,000 balance was to be financed by the seller for a term of 15 years.[2] The contract further specified the transaction was to be closed at Strout's office "on or before December 1, 1982," and if buyer failed to carry out the agreement the earnest money, at seller's option, would be forfeited to seller as liquidated damages. It further specified that if "seller be unable to convey a marketable title ... in accordance with this agreement, the sole obligation of the seller to the buyer shall be to refund the buyer's [earnest money] deposit hereunder ...."

Albeit the contract specified a closing date of "on or before December 1, 1982," and the payment of $37,000 "in cash or certified check on closing," there was evidence that a Strout agent wrote on buyer Benson's copy of the agreement "Closing Nov 22—2 p.m." Bachelier denied knowledge of such a notation. When Benson arrived at Strout's office November 22 with $37,000 for closing, she was told Bachelier was not ready to close. Benson did not

---

1. Rule references are to Missouri Rules of Court, V.A.M.R.

2. Since the parties' intent as to the total purchase price and remaining balance is not an issue, we do not here attempt to resolve the inconsistencies as to these amounts.

insist upon closing at that time and apparently acquiesced to a later unspecified closing date but was never "given a subsequent date upon which to show up again" for closing. Bachelier testified that when he went to Strout's office for closing on December 1, 1982 [a Wednesday] he was told the matter could not then be concluded because Benson had part or all of the $37,000 closing money in an interest bearing bank account [CD's] which could only be withdrawn on a Monday without penalty. Without insisting on performance of the contract as written, and ignoring his persistent efforts and those of his attorney to consummate the transaction via a wraparound deed of trust, Bachelier claimed he went to Strout's office on several Mondays thereafter.

Under date of January 10, 1983, Bachelier wrote Strout that he understood Benson had decided not to close the deal and had, therefore, forfeited the $13,000 deposit which he expected to receive without delay. There is no indication a copy of this letter was sent to Benson or to counsel for either side. On January 12 and 27, 1983, Benson's lawyer wrote Strout cancelling the sales agreement and demanding return of the $13,000 earnest money because "Bachelier has been unable to deliver title free and clear as required by the real estate contract." These letters were posted and Bachelier's agent received them about one and a half months after the original closing date. After delivery of these letters neither Bachelier nor his agent did anything until mid-February 1983 (a month after Benson cancelled the contract) when Bachelier, via his agent, offered to give clear title to the property at closing. At trial Strout's branch manager agreed that up until mid-February 1983 Benson had never been informed of a day certain for closing the deal in accordance with the terms of the agreement and that in all the interim period between December 1, 1982, and until the mid-February 1983, offer, supra, Bachelier's only attempts to conclude the transaction were by having Benson "assume the existing deeds of trust."

■ Without being certain of the specific dates involved (the legal file and briefs received being most indefinite), the proposed wrap-around agreement was submitted to Benson's attorney, considered and rejected. Both at trial and upon appeal Bachelier made and makes much fuss concerning the fact Benson never made actual tender or delivery of the $37,000 due on closing. However, this overlooks the fact that a tender is waived when the tenderee [here advocating a wrap-around deed of trust in lieu of title free and clear of all liens and encumbrances] takes and maintains any position which would render a tender a vain and idle ceremony. *Miran Investment Co. v. Medical West Building Corp.*, 414 S.W.2d 297, 303–304[14] (Mo. 1967); *Owens v. Automobile Recovery Bureau, Inc.*, 544 S.W.2d 26, 31[2] (Mo.App. 1976). If, as here, the contracted-for tender was due on closing and Bachelier was not ready, willing or able to close as specified in the contract but only in the noncontractual and unacceptable newly conceived procedure proffered by him, a tender by Benson would have been a vain and idle ceremony which was not a required rite so long as Bachelier's extra-contractual position was maintained.

On appeal in this court-tried case we must sustain the judgment nisi unless it is against the weight of the evidence or unless the trial court erroneously declared or applied the law. Also, all issues are deemed to have been found in accordance with the results reached and the judgment is to be affirmed under any reasonable theory presented by the evidence. We are to accept as true all evidence and permissible inferences favorable to Benson and disregard any contradictory evidence. *Osterberger v. Hites Const. Co.*, 599 S.W.2d 221, 225[1–3] (Mo.App.1980) and cases there cited. Furthermore, we must recall the rule that as trier of the facts, the trial court had leave to believe or disbelieve all, part or none of the testimony of any witness. *Ozark Wood Industries v. First Nat. Bank of Doniphan*, 625 S.W.2d 651, 653–654[7] (Mo.App.1981); Rule 73.01(c).

Bachelier contends to this tribunal that the evidence demonstrated his ever willingness, readiness and ability to conclude the transaction under the terms of the signed contract and insists that had Benson tendered performance under the terms of the original agreement he would have been able and willing to perform. This ignores, however, that contrary to the contract and immediately following its execution in October 1982, Bachelier unrelentingly sought to transfer the property subject to five deeds of trust. It also deliberately disregards Bachelier's trial admission that "the first time [he] ever agreed to transfer the property free and clear was clear in the middle of February 1983," or a month after Benson's lawyer cancelled the contract because of Bachelier's noncompliance therewith. It also ignores the testimony of Bachelier's agent that "the real reason now that there was no closing upon December 1st or sometime thereafter [was] there were five deeds of trust upon the property and Mr. Frank Bachelier did not intend to release them at closing."

In his trial testimony Bachelier admitted he was aware the contract obligated him to convey the property free and clear of all liens and encumbrances. But even absent such admission, as a signatory to the agreement Bachelier is presumed to have known and accepted its terms. *McDermott v. Burpo,* 663 S.W.2d 256, 262[10] (Mo.App.1983). Nevertheless, when Bachelier executed the agreement he was fully aware the property was, in fact, subject to five deeds of trust. However, in spite of the clear wording of the contract and Bachelier's admitted awareness thereof, he immediately instructed his lawyer "to prepare a wrap-around deed of trust" because "That is the way that I understood it was to be transferred." [For an explanation of a wrap-around mortgage or deed of trust, see *Olster v. Commissioner of Internal Revenue,* 751 F.2d 1168, 1170 n. 2 (11th Cir.1985)]. To augment the foregoing that Bachelier only intended to convey the property subject to the five deeds of trust, are the allegations contained in his counterclaim against plaintiff Strout and which was ordered tried in a separate trial per Rule 66.02. In that counterclaim Bachelier sought damages against his agent for omitting to recite in the contract the property was subject to five deeds of trust and for preparing a contract which bound him to convey the property free and clear of all liens and encumbrances. Bachelier's claim that Benson should not prevail because she did not tender the $37,000 due on closing has no merit in view of his ceaseless efforts to convey subject to the deeds of trust and contrary to contract provisions. "The courts of Missouri unanimously announce the rule that 'where failure of a party to perform a condition is induced by a manifestation to him by the other party that he will not substantially perform his own promise, performance of such condition is waived and, therefore, excused.'" *Cooper v. Mayer,* 312 S.W.2d 127, 130[2] (Mo.1958).

The two points relied on by Bachelier in this appeal are intermixed and have been dealt with above. Finding no error in the rulings of the trial court, its judgment is affirmed.

GREENE, J., concurs.

FLANIGAN, J., concurs in result only.