Shirley RANDALL, Plaintiff–Appellant,

v.

Paul HARMON and Betty Harmon,
Defendants–Respondents.

No. 16608.

Missouri Court of Appeals,
Southern District,
Division One.

March 28, 1991.

James M. Martin, Martin and Malec, St. Louis, for plaintiff-appellant.

Irvin R. Zwibelman, Zwibelman, Edelman & Walter, Clayton, for defendants-respondents.

PREWITT, Judge.

Following nonjury trial, judgment was entered denying plaintiff's petition to invalidate a contract for the sale of realty and granting defendant's counterclaim for specific performance and insurance proceeds of $80,614.20. Plaintiff appeals.[1]

Review is under Rule 73.01(c). As that rule is interpreted, the judgment is to be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or erroneously applies the law. *Plunkett v. Parkin,* 788 S.W.2d 356, 357 (Mo.App.1990). Due regard is given to the opportunity of the trial judge to determine the credibility of witnesses. Rule 73.-01(c)(2). The trial judge can disbelieve testimony even when uncontradicted. *Robinson v. Estate of Robinson,* 768 S.W.2d 676, 677 (Mo.App.1989).

Certain of plaintiff's points state that the trial court's findings were against the weight of the evidence. An appellate court sets aside a judgment because it is against the weight of the evidence with caution when there is a firm belief that the judgment is wrong. *Plunkett,* 788 S.W.2d at 357. "Weight of the evidence" means its weight in probative value, not its quantity. *Looney v. Estate of Eshleman,* 783 S.W.2d 164, 165 (Mo.App.1990). "The weight of evidence is not determined by mathematics, but on its effect in inducing belief." *Id.*

By document dated July 19, 1984, plaintiff and her husband, Murry Randall, since deceased, entered into a listing agreement with Gladys Caulley, apparently doing business as Caulley Realty or Caulley Realty &

---

1. In a previous appeal by appellant, specific performance of a claimed settlement agreement was reversed. *Randall v. Harmon,* 761 S.W.2d 278 (Mo.App.1988).

Insurance. The listing agreement covered a house and thirteen acres owned by them. The agreement gave "Caulley Realty" an exclusive right to sell for six months at $25,000.

By document entitled "Earnest Money Receipt and Sales Contract" dated December 14, 1984, plaintiff and her husband agreed to sell to defendants the listed property for $24,000. The sale was to be closed on January 25, "1984".[2] Pursuant to said agreement, defendants paid $100 which was retained by the real estate broker. They were to pay $23,900 on closing. On January 7, 1985, a fire caused extensive damage to the house and outbuilding and some shrubbery on the property. A provision in the contract provided:

> If, after contract is executed, the premises be destroyed by fire, windstorm or otherwise, seller shall restore same within thirty days if possible and sale closing date shall be extended accordingly, but otherwise purchaser shall have option of cancelling or enforcing contract; if enforced, purchaser shall be entitled to insurance; if cancelled, earnest deposit shall be returned to purchaser. In either event agent shall receive full sale commission. Seller shall assume risk of such destruction or damage and shall have the obligation consent or insurance companies to sale contract."

The last clause of the final sentence appears muddled but it is not considered relevant by the parties. Plaintiff and her husband made no attempt to restore the premises and never communicated to the broker or defendants whether they intended to restore the improvements.

Defendants contend that at all times they sought to carry out and enforce the agreement. Plaintiff claims that defendants are not entitled to enforce it because they had not performed or tendered performance of their portion of the contract or properly exercised their option of enforcing it; there was no adequate description of the real estate in the agreement; and the trial court erred in awarding the insurance proceeds

from insurance plaintiff and her husband had secured for the property.

After the fire, the broker communicated with plaintiff and her husband as to what they intended to do regarding the sale, but was never able to get an answer. She testified that plaintiff's husband became "verbally abusive" to her, that he used profanity and when she asked if there would be enough insurance proceeds to rebuild the house, he said it was none of her business and told her "I don't need you any longer". There was evidence that the house could have been restored within 30 days, although it may have been necessary to run two shifts of workmen totaling 16 hours a day to do so.

■ There was a basis for the trial court to determine that plaintiff and her husband were attempting to avoid the contract so that they could receive the insurance proceeds. After the fire occurred, not knowing what plaintiffs' intentions were, no new closing date was set and neither party appeared on the date previously set for closing, although plaintiff's sister-in-law appeared on that date at the broker's place of business. She did not indicate and there was no evidence showing she was authorized to proceed to close. It was obvious she was there to determine if defendants had appeared or were going to appear for a closing on that date.

The real estate broker testified she called the defendants after the fire and told them she would give them a new closing date, but she was never able to do so because of the lack of cooperation of plaintiff and her husband. The evidence strongly indicates that plaintiff and her husband intended to prevent a closing and sought not to have to abide by the contract. The trial court was justified in finding that defendants intended to enforce the contract and any attempt on the part of defendants to make the final payment and otherwise proceed to close would have been futile.

A tender of the balance of the purchase price is waived when the seller maintains a position which would render the tender a

**2.** Apparently 1985 was intended and the year is not in dispute.

vain and idle ceremony. *Strout Realty v. Benson,* 699 S.W.2d 795, 797 (Mo.App. 1985). Where a contract for tender was due on closing and the seller was not ready and willing to close, a tender of the purchase price was not required to enforce the contract. *Id.*

Plaintiff raises other points, but with one exception they are so without merit we see no need in lengthening this opinion through a discussion of them. One remaining point requires brief comment. It states there was an inadequate description of the real estate in the. contract on which to base specific performance.

"[R]ealty need not be fully and accurately described as long as the writing affords means whereby identification may be made perfect and certain by parol evidence." *Cochran v. DeShazo,* 579 S.W.2d 408, 410 (Mo.App.1979). See also *Seabaugh v. Sailer,* 679 S.W.2d 924, 926 (Mo.App.1984). Under these holdings the property description was sufficient for the court to decree specific performance.

The judgment is affirmed.

MAUS, P.J., and CROW, J., concur.