**Maynard R. JOHNSON, Plaintiff/Respondent,**

v.

**Noreen K. MOORE, Defendant/Appellant.**

No. 68868.

Missouri Court of Appeals, Eastern District, Division Two.

Oct. 1, 1996.

W. Dudley McCarter, Behr, Mantovani, McCarter & Potter, P.C., Clayton, for defendant/appellant.

David T. Butsch, Green, Schaaf & Margo, James P. Carmody, Clayton, for plaintiff/respondent.

CRANE, Presiding Judge.

Residential real estate buyer brought a breach of contract action against seller for seller's failure to convey the property to the buyer at closing. Seller defended *pro se.* After a bench trial the trial court entered judgment in favor of buyer for damages and interest in the amount of $14,346.30. Seller appeals. She claims insufficient evidence was offered to establish tender of purchase price, payment of earnest money deposit, and buyer's acceptance. She also asserts plain error in the admission of a deposition and in the admission of oral testimony when supporting documents were not in evidence. We affirm.

In August 1992 defendant Noreen Moore (hereinafter "seller") entered into a residential listing agreement appointing Coldwell Banker her sole and exclusive agent with the exclusive right to sell her house located at 330 Norwich Court in Ballwin, Missouri. Coldwell Banker sales associate Kay Dobson was the listing agent. On September 13, 1996, Irene Payne, another Coldwell Banker agent from the same office, conducted an open house for Dobson, who had another open house that day. Plaintiff Maynard Johnson (hereinafter "buyer") viewed the house on the day of the open house. On September 16, 1992, buyer contacted Irene Payne and completed and signed a four-page residential sale contract form to purchase the house for $112,000.00. He gave the form to Irene Payne and wrote a check payable to Coldwell Banker for $200.00 as earnest money. Dobson learned of buyer's offer that same day and went to the office and got the contract.

At the time buyer made the offer, seller was in Connecticut, where she had taken employment. Dobson transmitted a copy of the offer to seller on September 16, 1992 by a facsimile. Seller received that offer on September 16 and, on September 17, 1992, made a counteroffer of $120,000.00 by striking through the $112,000.00 figure and writing in $120,000.00. Seller indicated on this form that her counteroffer was to be accepted by buyer by 10:00 p.m. on September 18, 1992. Seller then faxed the counteroffer to the Coldwell Banker office. Dobson received

pages one and four of the form contract, notified Payne of the counteroffer, and left the faxed pages in Payne's personal mailbox in the office.

Payne notified buyer of the counteroffer on September 17. Buyer, who was out-of-town, returned to St. Louis at approximately 6:30 p.m. on September 18 and met Payne sometime between 8:30 and 9:30 p.m. at the Coldwell Banker office and signed the contract and duplicates at approximately 9:45 or 9:50 p.m. that day. Buyer also wrote a $1,000.00 check on his account to Coldwell Banker as additional earnest money, which he post-dated September 20, 1992, but gave to Payne that night. Payne gave both that check and the previous check to Coldwell Banker.

The residential sales contract for the Norwich Court property provided the total price was $120,000.00 to be paid as follows: $200.00 earnest money to be paid by buyer and held by the listing broker subject to paragraph twelve of the contract; an additional $1,000.00 earnest money to be paid by buyer within three days after the date of final acceptance of the sale contract and held by the listing broker; and $118,800.00 to be paid at closing. The contract had financing and inspection contingency clauses. Paragraph twelve required the listing broker to deposit the earnest money no later than five banking days after the date of final acceptance and the additional earnest money no later than five banking days after receipt. The contract specified closing was to be held on November 6, 1992.

Payne telephoned Dobson at 9:55 p.m. on September 18 to notify her that buyer had accepted the counteroffer. She left the contract in Dobson's mailbox at the office. Dobson did not hear from seller at any time on the evening of September 18. On September 19, seller, who was still in Connecticut, telephoned Dobson who informed seller that her house had been sold. Seller immediately started crying and said that the job in Connecticut was not working out. She also told Dobson she did not want to sell her house and she did not know what to do. She did not ask Dobson to do anything. Dobson faxed a copy of the contract to seller. Dob-

son took the house off the market and took down the sign.

When she returned to St. Louis, seller again told Dobson that she did not want to sell her house. Dobson told seller that she should seek legal advice. Dobson testified that at some point after seller talked to an attorney, seller told her "I guess I've sold my house." After that, Dobson helped seller find a new residence. Seller made offers and executed sales contracts on two condominiums, both of which were accepted. Seller made both condominium contracts contingent on the "successful closing" of 330 Norwich Court "which is now under firm contract."

In the meantime, buyer obtained a loan for $109,000.00. A property inspection, termite inspection, and an inspection by Laclede Gas were conducted. Buyer, seller and Dobson were present at the termite inspection in mid-October at which time the parties discussed the possibility of extending the November 6 closing date so seller could have more time to find a new residence. Dobson drew up a document to extend the closing date, but seller did not sign it.

On November 6, 1992, at 2:00 p.m., buyer, his fiance, and Payne appeared at Ticor Title to proceed with closing. Buyer testified that Boatmen's Bank had approved the loan, that all loan papers were in place and buyer was ready to proceed with closing. Seller did not appear at Ticor for the November 6 closing.

Buyer subsequently filed an action seeking enforcement of the real estate contract or damages in lieu of specific performance. At trial, buyer's expert witness, a real estate appraiser, testified that the fair market value of the house as of November 6, 1992 was $130,000.00, which was $10,000.00 more than the contract price of $120,000.00. Buyer testified to out of pocket expenses of $1,200.00 in earnest money, $190.00 for inspections, and $250.00 for the loan processing fee. The trial court entered judgment in buyer's favor for $11,640.00 actual damages plus prejudgment interest of $2,706.30 for a total judgment of $14,346.30.

In a court-tried case we sustain the judgment of the trial court unless there is no substantial evidence to support it, it is

against the weight of the evidence, or it erroneously applies or declares the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We accept all evidence and inferences favorable to the judgment, and disregard all contrary evidence and inferences. *Central Dist. Alarm, Inc. v. Hal–Tuc, Inc.,* 886 S.W.2d 210, 211 (Mo.App.1994). No findings or conclusions were requested and none were entered. Where the trial court enters no findings of fact, we assume that the trial court resolved all issues of fact in accordance with the result reached. Rule 73.01(a)(3); 21 *West, Inc. v. Meadowgreen Trails, Inc.,* 913 S.W.2d 858, 863 (Mo.App.1995).

For her first point seller contends that the trial court erred in granting judgment for buyer because buyer did not tender the purchase price on the day of closing and there was no substantial evidence that buyer had the ability to tender. Seller argues that buyer's loan commitment of $109,000.00 was $9,800.00 short of the amount that was to be paid by cashier's check. Buyer responds that he was prepared to close and that actual tender was not required since the parties' obligations were concurrent and seller waived her right to tender when she failed to appear for closing.

■ A "tender" is an offer to perform a contract with the present ability to do so, and comprehends a readiness and willingness to perform. *Dippel v. Rokwell Ind., Inc.,* 715 S.W.2d 553, 556 (Mo.App.1986). The law does not require a person who is ready and able to perform his contractual duties to tender his performance where such would be a "vain and idle ceremony." *Intern. Harvester Co. v. Mahacek,* 705 S.W.2d 603, 605 (Mo.App.1986) (quoting *Owens v. Automobile Recovery Bureau, Inc.,* 544 S.W.2d 26, 31 (Mo.App.1976)); *Collins v. Trammell,* 911 S.W.2d 635, 638 (Mo.App.1995). In particular, a tender of the balance of the purchase price is waived when the seller maintains a position that would render the tender a useless act. *Randall v. Harmon,* 806 S.W.2d 136, 137–38 (Mo.App.1991). Where a tender is due on closing and the seller is not ready and willing to close, tender of the purchase price is not required to enforce the contract. *Id.* at 138. In the present case, tender was

waived when seller did not appear for closing.

■ Seller, however, contends there was no substantial evidence that buyer was ready and able to perform. We disagree. Buyer performed all of his pre-closing obligations. Buyer testified he had obtained a loan commitment for $109,000.00, that the balance of the purchase price was his down-payment, and that he appeared at the title company for closing ready to go forward with the purchase of the property. This testimony was substantial evidence that buyer was ready and able to pay the balance of the purchase price. Point one is denied.

■ For her second point seller asserts the trial court plainly erred in allowing buyer to read portions of Dobson's deposition at trial without making a finding that Dobson was unavailable as required by Rule 57.07(a)(3). At trial, seller did not object when buyer read Dobson's deposition into evidence. Further, during her own case, seller also read portions of Dobson's deposition into evidence, including some of the same excerpts. A party cannot complain on appeal of any alleged error in which, by his or her own conduct at trial, he or she joined in or acquiesced to. *Lewis v. Roskin,* 895 S.W.2d 190, 198 (Mo.App.1995). A party waives a challenge to the admission of evidence where that party offers similar evidence. *Moll v. General Automatic Transfer Co.,* 873 S.W.2d 900, 904 (Mo.App.1994). The plain error rule may not be invoked to excuse mere failure to timely and properly object and may be resorted to only in the exceptional case where the reviewing court deems that a manifest injustice has occurred. *Cowden v. Sun Oil Co.,* 583 S.W.2d 547, 549–50 (Mo. App.1979). We find no basis for invoking the plain error rule with respect to the admission of this deposition. Point two is denied.

■ For her third point seller asserts the trial court plainly erred in admitting oral testimony that buyer had obtained a loan commitment and paid appraisal fees and inspection fees "in that such documents were never offered into evidence and no explanation for the failure to use the best evidence of such matters was ever given, and without

this evidence there was no competent evidence of Johnson's performance or Johnson's damages." Buyer testified at trial that he had obtained a loan commitment for the purchase of the house and that he had incurred costs for inspections and loan processing fees. He did not offer any documents concerning these items into evidence. Seller argues that it was plain error for the trial court to admit buyer's testimony since it is not the best evidence of these items. Seller did not object to buyer's testimony at trial and thus did not preserve this point of error on review. *Schreiber v. Bradford*, 754 S.W.2d 41, 42 (Mo.App.1988). A rule of evidence not invoked is waived. *Goodman v. Allen Cab Co.*, 360 Mo. 1094, 232 S.W.2d 535, 539 (1950).

▇▇▇ Further, even if it had been raised, the "best evidence" rule does not apply to exclude buyer's damage testimony. Buyer had personal knowledge that he had obtained a loan commitment and had incurred costs for inspections and loan processing fees. "Where the fact to be proved is evidenced in a writing but also exists independently of that writing, then both sources, oral and written, become primary evidence, and the best evidence rule does not exclude evidence based on personal knowledge even if documents or other writings would provide some of the same information." *Cooley v. Director of Revenue*, 896 S.W.2d 468, 470 (Mo. banc 1995). Point three is denied.

▇▇▇ For her fourth point seller contends that "the undisputed evidence showed that Johnson failed to comply with a condition precedent to the enforcement of that contract by failing to pay the earnest money deposit required by the contract and, therefore, the contract was void and unenforceable." Seller contends that the earnest money checks were deposited in the bank more than five days after final acceptance. This argument has no merit. The contract did not obligate buyer to deposit the checks. Rather, paragraph twelve of the residential sales contract provided that earnest money was to be "deposited by the *listing broker* as soon as practicable, but not later than five banking days after the date of final acceptance of the contract by all parties, and that any additional earnest money shall be deposited by the *listing broker* no later that five days after receipt." [emphasis added] The contract also specified that the listing and selling broker was Coldwell Banker and that the selling broker acted on behalf of the seller. Accordingly, any breach of the listing broker's obligation to timely deposit the funds has no effect on buyer's enforcement of the contract. Point four is denied.

▇▇▇ For her fifth point seller asserts that there was no substantial evidence that buyer "accepted the contract prior to September 18, 1992 as required by the contract, and therefore the contract was null and void as of September 18, 1992, and [buyer] is barred by the statute of frauds from enforcing the sale of the alleged oral contract or on the basis of estoppel." Seller contends buyer did not accept the counteroffer by 10:00 p.m. on September 18, 1992. Seller argues that if buyer made any acceptance at all on September 18 before 10:00 p.m., such acceptance was oral.

There was substantial evidence that buyer accepted the contract in writing before 10:00 p.m. on September 18, 1992. Buyer testified at trial that he returned to St. Louis at approximately 6:30 p.m. on September 18. He contacted Irene Payne and met her at the Coldwell Banker office sometime between 8:30 and 9:30 p.m. Buyer then testified that he proceeded to sign the contract at approximately 9:45 to 9:50 p.m. Exhibit 1 contained a written provision that "Buyer accepts ... the foregoing offer at 9:55 p.m. of September 18, 1992 ... (signed) Maynard Johnson Buyer." Buyer testified that the signature was his and that he placed it on the document when he accepted the counteroffer.

Exhibit 1 bore all the parties' signatures and was the contract on which the action was brought. At trial seller brought in other copies of the contract which were not fully signed. On the conflicting evidence relating to buyer's signature, we defer to the trial court's assessment of credibility. *In re Marriage of Julian*, 868 S.W.2d 182, 184 (Mo. App.1994).

▇▇▇ Seller also testified that she had not received a copy with buyer's signature before the 10:00 p.m. deadline and relies on this

testimony to establish lack of acceptance. This argument, also, has no merit. Coldwell Banker was seller's sole and exclusive agent. Payne was a Coldwell Banker agent and was the designated selling agent on the contract.[1] Notification and delivery of acceptance of the counteroffer to Payne before the 10:00 p.m. deadline was notice to seller. *See, e.g., Hendricks v. Behee,* 786 S.W.2d 610, 612 (Mo. App.1990). Point five is denied.

The judgment of the trial court is affirmed.

GERALD M. SMITH and KAROHL, JJ., concur.

**1.** The sales contract contained the following provision in accord with 4 C.S.R. 250–8.095:
AGENCY DISCLOSURE
Buyer confirms that before signing this offer to purchase, oral disclosure of the selling broker's agency relationships has been made, and he understands that the selling broker is acting on behalf of the seller of the real estate, that any commission will come either directly or indirectly from the Seller, and that information given to the selling broker by Buyer may be disclosed to the Seller. By his signature below, agent of the selling broker confirms that he has disclosed his agency relationship with the parties to the Buyer.

   (Signed) Irene Payne       Date: September 16, 1992
   Selling Agent (Signature)

   COLDWELL BANKER       COLDWELL BANKER
   Selling Broker       Listing Broker