

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| **ROH FARMS, LLC,** | ) |
| | ) |
| **Appellant,** | )     **WD81919** |
| | ) |
| **v.** | )     **OPINION FILED: April 16, 2019** |
| | ) |
| **RICHARD W. COOK, JR. AND** | ) |
| **DAWN K. COOK,** | ) |
| | ) |
| **Respondents.** | ) |

**Appeal from the Circuit Court of Moniteau County, Missouri**
The Honorable Peggy D. Richardson, Judge

Before Special Division: Edward R. Ardini, Jr., Presiding Judge, Mark D. Pfeiffer, Judge
and Gary D. Witt, Judge

ROH Farms, LLC ("ROH Farms") appeals the judgment of the Circuit Court of

Moniteau County, Missouri finding that ROH Farms is not entitled to specific performance

of two contracts between ROH Farms and Richard Cook ("Richard")[1] and Dawn Cook

("Dawn") (collectively the "Cooks"). ROH Farms argues that the trial court erred in not

granting specific performance because any possible repudiation on the part of ROH Farms

was retracted when the Cooks did not treat it as a material breach. ROH Farms further

---

[1] Because multiple individuals involved in this case have the same surname, we refer to each by their first name for purposes of clarity. No familiarity or disrespect intended.

claims that the trial court erred in not granting specific performance because the contracts could not be unilaterally terminated, tendering the purchase price was not required to enforce the contracts, and granting specific performance would not have been unjust. We affirm.

## Statement of Facts[2]

ROH Farms is a limited liability company managed by Danny Harris ("Harris"), who has the authority to act on behalf of ROH Farms. ROH Farms and the Cooks entered into a contract for the sale of approximately 249 acres of farmland owned by the Cooks on March 17, 2011 ("Farm Contract"). The Farm Contract excluded the Cooks' residence and five acres surrounding the house. Margaret Rehma-Boulch ("Rehma-Boulch"), a licensed real estate broker from Re/Max, represented ROH Farms in the Farm Contract transaction. Joyce Bremer ("Bremer"), a licensed real estate salesperson with Re/Max, originally acted as the Cooks' agent under an exclusive right to sell agreement. Since both parties to the Farm Contract were represented by Re/Max agents, both Rehma-Boulch and Bremer became dual agents acting on behalf of both Buyer and Seller.

After the parties entered into the Farm Contract, Harris informed the Cooks for the first time of ROH Farms' plan to place a large cattle feedlot on the farm property adjacent to the Cooks' residence. Harris informed them that the placement of the feedlot would result in the Cooks' residence being uninhabitable due to the flies and odor. Due to this information, the parties entered into an additional contract to sell the Cooks' residence to

---

[2] On appellate review of a court tried case, the evidence is viewed "in the light most favorable to the circuit court's judgment and defer[s] to the circuit court's credibility determinations." *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014).

2

ROH Farms on September 22, 2011. Rehma-Boulch and Bremmer represented ROH Farms and the Cooks as dual agents acting for both parties under the terms of the contract for the residence ("Residential Contract"). The closing dates for both contracts was ultimately set for March 9, 2012.

Both the Farm Contract and the Residential Contract contained paragraphs titled "DEFAULT/REMEDIES" and stated in relevant part:

> If either party defaults in the performance of any obligation under this Contract, the party claiming default shall notify the other party in writing of the nature of the default and the party's election of remedy…
>
> If Seller defaults, Buyer may (1) specifically enforce this Contract and recover damages suffered by Buyers as a result of the delay in the acquisition of the Property; (2) terminate this contract by Notice to Seller, and agree to release Seller from liability upon Seller's release of the Earnest Money and reimbursement to Buyer for all actual costs and expenses incurred by Buyer…; or (3) pursue any other remedy and damages available at law or in equity.
>
> If Buyer defaults, Seller may (1) specifically enforce this Contract and recover damages suffered by Seller as a result of the delay in the sale of the Property; (2) terminate this contract by Notice to Buyer, and … retain the Earnest Money as liquidated damages and Seller's sole remedy …; or (3) pursue any other remedy and damages available at law or in equity.

In late December 2011, Harris informed Rehma-Boulch that he had lost $250,000 in an unrelated business deal, that his daughter was going to have a baby, and that ROH Farms was not going to close on the Cooks' real estate. Rehma-Boulch relayed this information to Bremer, who then relayed the information to the Cooks. The Cooks told Bremer that it was acceptable and they would let ROH Farms out of the contracts.

In reliance on being informed by Bremer that ROH Farms was not going to close on their property, the Cooks took several actions. On or about January 1, 2012 the Cooks

3

leased the farm property for the 2012 crop year to Stephen Cook ("Stephen"), who is a first cousin of Richard and had previously rented the farm property for row crops. The Cooks also cancelled plans for the construction of a new residence, for which two builders were in the process of preparing bids. The Cooks terminated their relationship with a different realtor who was helping them locate a rental property which they could live in until their new home was constructed. Further, the Cooks made a verbal agreement to sell the farm property, excluding their residence and five surrounding acres, to Stephen for the same net price they had negotiated with ROH Farms.

For approximately two months following the verbal notice to the Cooks regarding Harris's statement that ROH Farms would not purchase the property, Rehma-Boulch and Bremer made numerous efforts to reach Harris by phone, email, fax, and personal visits to his office. All these attempts to reach Harris were unsuccessful. Bremer then sent Harris a certified letter dated January 31, 2012 detailing her and Rehma-Boulch's attempts to reach him and noting his lack of response. Harris signed for the letter on February 2, 2012 but did not reply or respond to Bremer.

Further, approximately a week after the Cooks were informed that ROH Farms would not be buying the property, Bremer drafted a mutual release ("Mutual Release") to serve as a written acknowledgement of the parties' agreement that the contracts were terminated and would have provided for the disposition of the $3,000 earnest money deposit held in the Re/Max agency account. Under the terms of the Mutual Release, the Cooks would receive the $3,000 earnest money deposit and ROH Farms would additionally

4

pay $1,000 to Re/Max, $90 for pest control services, and $500 payment for an inspection. The Mutual Release was first tendered to ROH Farms and was never signed.

In late February 2012, Harris contacted Rehma-Boulch and indicated that ROH Farms wanted to close on the contract on the scheduled closing date of March 9, 2012. When the Cooks were informed that ROH Farms now wanted to close on the contracts they sought the advice of counsel, who sent a letter to Bremer advising that the Cooks had no further legal obligation under the contracts.

Harris pre-signed a number of documents in preparation for the closing. These documents, including the settlement statement (HUD-1), agreement to provide insurance, a personal guaranty from Harris, a promissory note, and a deed of trust for the loan on the property. All these documents showed the "buyer" or "borrower" as "Harris Ventures, Inc.," not ROH Farms. Harris is the president of Harris Ventures and signed the documents in his official capacity as such. The contracts between the Cooks and ROH Farms were never assigned by ROH Farms to Harris Ventures or any other third party.

Days before the putative closing, Bremer called the Cooks and asked whether they intended to attend the closing and close on the contracts. The Cooks informed her that they believed the contracts became invalid after ROH Farms repudiated them and, therefore, they would not be present for the closing. ROH Farms filed suit against the Cooks and by the time of trial the sole issue was for specific performance of the real estate contracts.

A bench trial was held on April 20, 2018. Judgment was entered on May 20, 2018, in favor of the Cooks. In its judgment, the trial court found that ROH Farms was not entitled to the specific performance it sought on three separate and independent grounds.

First, the trial court found that ROH Farms was not entitled to specific performance because ROH Farms anticipatorily breached the contract by repudiation and the Cooks detrimentally relied on that repudiation. Second, the trial court found that ROH Farms was not entitled to specific performance because ROH Farms failed to establish that it was ready, willing, and able to perform its obligations under the contracts. Finally, the trial court found that ROH Farms was not entitled to specific performance based on additional equitable considerations. The trial court found that due to the ROH Farms's "sharp dealings and high-pressure negotiation tactics", their conduct falls within the doctrine of unclean hands. Further, the trial court found that it was not equitable to award benefit under the contracts to ROH Farms after it remained silent for months after the repudiation. Further, the trial court found ROH Farms failed to establish that it was damaged by its inability to close on the Cooks' property.

This timely appeal followed.

### Standard of Review

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "Appellate courts 'accept as true the evidence and inferences … favorable to the trial court's decree and disregard all contrary evidence.'" *Id* at 200 (quoting *Zweig v. Metro. St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013)). "Circuit courts are free to believe any, all, or none of the evidence presented at trial." *Id*. "Deference is . . . given to the trial

6

court's findings of fact." *Crestwood Shops, L.L.C. v. Hilkene*, 197 S.W.3d 641, 655 (Mo. App. W.D. 2006).

Specific performance is purely an equitable remedy and must be governed by equitable principles. *Kopp v. Franks*, 792 S.W.2d 413, 419 (Mo. App. S.D. 1990). "The equitable remedy of specific performance is not a matter of right but is a remedy applied by courts of equity, depending upon the facts in the particular case; and the trial court has judicial discretion within the established doctrines and principles of equity to award or withhold the remedy." *Id.* "Specific performance 'is purely an equitable remedy' which 'is invoked primarily that complete justice may be done between the parties, and courts of equity will not decree specific performance where it will result in injustices.'" *Nahn v. Soffer*, 824 S.W.2d 442, 444 (Mo. App. E.D. 1991) (quoting *Kopp*, 792 S.W.2d at 419).

**Analysis**

ROH Farms raises four points on appeal. As we find the third point on appeal dispositive we begin our analysis there. In its third point on appeal, ROH Farms argues that the trial court erred in denying specific performance on the basis that ROH Farms did not establish it was able to perform its obligations under the contract because tendering the purchase price is not a requirement to enforce the contracts when the Cooks failed to appear at closing. ROH Farms argues that they were relieved of any obligation to tender the purchase price since the Cooks did not show up to the closing.

"[P]roof of performance or tender of performance is necessary to the recovery upon an express contract[.]" *Miran Inv. Co. v. Med. West Bldg. Corp.*, 414 S.W.2d 297, 302 (Mo. banc 1967); *see Reed v. Rope*, 817 S.W.2d 503, 511 (Mo. App. W.D. 1991). "The

7

party seeking specific performance must prove by clear and convincing evidence that he or she has performed, or tendered performance of, his or her portion of the contract." *Kassebaum v. Kassebaum*, 42 S.W.3d 685, 699 (Mo. App. E.D. 2001). "A 'tender' is an offer to perform a contract with the present ability to do so, and comprehends a readiness and willingness to perform." *Johnson v. Moore*, 931 S.W.2d 191, 195 (Mo. App. E.D. 1996). "A mere announcement of readiness to settle the transaction, a premature offer to perform, or an offer to close a real estate contract, is not a sufficient tender." *Kassebaum,* 42 S.W.3d at 699.

The trial court made the factual finding that ROH Farms "did not clearly and convincingly prove it was ready, willing, and able to perform the contractual obligation." "Deference is . . . given to the trial court's findings of fact." *Crestwood Shops, L.L.C.*, 197 S.W.3d at 655. Further, the trial court's factual findings were supported by the evidence at trial. The only evidence adduced by ROH Farms of its readiness, willingness, and ability to perform, besides Harris's stated desire to close on the closing date, was a number of pre-signed documents which had been drafted in preparation for the closing. However, these documents, which include the settlement statement (HUD-1), agreement to provide insurance, a personal guaranty from Harris, a promissory note, and a deed of trust to secure the loan on the property, showed the "buyer" or "borrower" as "Harris Ventures, Inc.", and not ROH Farms. ROH Farms never assigned its interest in the contracts to Harris Ventures, Inc., a fact that was confirmed by ROH Farms response to Interrogatory 13 wherein they acknowledged that neither real estate contract was assigned to any third party prior to the closing date. "A proposed purchaser is not able, when he is depending upon third parties

8

who are in no way bound to furnish the funds to make the purchase." *Suhre v. Busch*, 120 S.W.2d 47, 59 (Mo. 1938). ROH Farms failed to provide sufficient evidence that it was ready, willing, and able to perform its obligations under the contracts.

ROH Farms argues that its obligation to tender the purchase price was waived by the Cooks' failure to appear at closing. ROH Farms cites to *Johnson*, 931 S.W.2d at 195 for support. However, in *Johnson* the Eastern District of this Court found that while the buyer was not required to tender the purchase price, the buyer had performed all pre-closing obligations to demonstrate they were ready, willing, and able to perform its obligations under the contract. *Id.* However, the facts of this case support a finding that ROH Farms had not performed any of the pre-closing obligations under the contract. The only evidence was that Harris Ventures, Inc. which was not party to the contracts, had performed some of the obligations of ROH Farms. While ROH Farms may have been relieved of its obligation to tender the purchase price as a result of the Cooks' failure to attend the closing, ROH Farms was still required to demonstrate that it was ready, willing, and able to perform it obligations under the agreement. Providing documents executed by a third party is insufficient to show that ROH Farms was ready willing and able to tender performance.

The trial court did not err in finding that ROH Farms failed to prove that it tendered performance of its obligations, and therefore, failed to establish that it was entitled to specific performance. Since the trial court's judgment denying ROH Farms's petition for specific performance was based on three separate and independent bases, an affirmation of one of the bases is sufficient to affirm the trial court's judgment. Therefore, we need not address ROH Farms's other points on appeal.

9

## Conclusion

The trial court's judgment is affirmed.

_____

Gary D. Witt, Judge

All concur