

# Missouri Court of Appeals
## Southern District

### In Division

CHARANJIT SINGH,                                    )
                                                    )
    Plaintiff-Appellant,                     )
                                                    )
v.                                                  )    No. SD37729
                                                    )
LUCKY'S TRAVEL CENTER, LLC,                         )    **Filed:  May 23, 2023**
MANJINDER SINGH, DAVINDERPAL                        )
SINGH, SUKHVIR KAUR, KL & SG,                       )
LLC, d/b/a LUCKY'S TRAVEL CENTER,                   )
KULDIP SINGH LUBANA, and                            )
SUNILPURI GOSWAMI,                                  )
                                                    )
    Defendants-Respondents.                  )

### APPEAL FROM THE CIRCUIT COURT OF SHANNON COUNTY

Honorable Harvey S. Allen

**<u>AFFIRMED</u>**

This appeal involves an alleged agreement to purchase a business that included real property.  Charanjit Singh ("Charlie" or "Plaintiff") appeals a judgment ("the judgment") of the Circuit Court of Shannon County ("the circuit court" or "the trial court") that found, after a bench trial, that Plaintiff was not entitled to specific performance of two contracts or "agreements" that would have allowed Plaintiff to purchase the business and real property

1

that constituted Lucky's Travel Center, LLC ("Lucky's").[1]  Plaintiff raises four points on appeal.  Finding no merit in any of them, we affirm the judgment of the circuit court.

## Standard of Review

The trial court's judgment is presumed correct, and the appellant bears the burden to demonstrate that the judgment is erroneous.  *Tribus, LLC v. Greater Metro, Inc.*, 589 S.W.3d 679, 691 (Mo. App. E.D. 2019).  "In reviewing a court-tried case, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law."  *N.M.C. v. Mo. State Hwy. Patrol Crim. Recs. Repository*, 661 S.W.3d 18, 23 (Mo. App. E.D. 2023) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

> "Appellate courts 'accept as true the evidence and inferences ... favorable to the trial court's decree and disregard all contrary evidence.'"  [*Ivie v. Smith*, 439 S.W.3d 189,] 200 [(Mo. banc 2014)] (quoting *Zweig v. Metro. St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013)).  "Circuit courts are free to believe any, all, or none of the evidence presented at trial." *Id.* "Deference is ... given to the trial court's findings of fact."  *Crestwood Shops, L.L.C. v. Hilkene*, 197 S.W.3d 641, 655 (Mo. App. W.D. 2006).

*ROH Farms, LLC v. Cook*, 572 S.W.3d 121, 125 (Mo. App. W.D. 2019).[2]

## The Evidence

The defendants in the case are Lucky's, Manjinder Singh ("Manjinder"), his wife, Sukhvir Kaur, his son, Davinderpal Singh ("Davinderpal"), along with KL & SG, LLC ("KLSG"[3]) and its two members, Kuldip Singh Lubana, and Sunilpuri Goswami (collectively "Defendants").

---

[1] Lucky's consists of a convenience store, motel, and gas station in Birch Tree.  The judgment also denied a claim for unpaid wages asserted by Plaintiff's wife, Harpreet Kaur ("Harpreet"), but that ruling is not challenged in this appeal.

[2] Our summary of the relevant evidence is presented in accordance with this standard.  Evidence contrary to the judgment is included only when necessary to provide context for Plaintiff's arguments.

[3] KLSG is the subsequent purchaser of the assets of Lucky's.

Plaintiff's suit sought specific performance of a 2011 written "Memorandum of Understanding" (the "2011 MOU") between Charlie, Manjinder, and Davinderpal, regarding the operation and proposed sale of Lucky's, including the real property upon which it stood. The 2011 MOU provided that "[Charlie[4]] will own a 50% interest in [Lucky's] upon full and final completion of the terms of the agreement and payment of the entire purchase price set forth below."[5]

The 2011 MOU stated that the purchase price for Lucky's was $245,000, payable at the rate of $3,000 per month until the entire purchase price was paid in full. It also provided that Charlie could make the $3,000 per month payment by means of a wage assignment. In addition, it stated that Manjinder would act as manager of Lucky's, and Charlie would be the assistant manager. Charlie and Harpreet managed the business and lived on the premises rent-free for the next several years.

In 2015, Charlie and Manjinder again met to discuss Plaintiff's purchase of the second half of Lucky's, this time at the law office of attorney Kyle Warren ("Attorney Warren"), who represented Lucky's. During that meeting, Attorney Warren made notes of the parties' discussions regarding the sale of the remaining 50% of Lucky's, and those

---

[4] The 2011 MOU actually provided that Lucky's assets would be transferred to Rajinder Kaul, Charlie's mother-in-law, upon final completion of the terms of the agreement and payment in full of the total purchase price. Plaintiff's brief, however, asserts that Rajinder Kaul assigned her interest in Lucky's to Charlie, and that does not appear to have been a disputed issue in the case. As a result, we refer to Charlie's alleged ownership interest in Lucky's rather than Rajinder Kaul's.

[5] Because no evidence indicated that an immediate transfer of title occurred under the terms of the 2011 MOU, and the agreement required full payment of the entire purchase price, the 2011 MOU constituted what is sometimes called a "contract for deed."

> [J]ust as a debtor under a deed of trust must tender full payment of the total amount due in order to accomplish statutory redemption, so also the purchaser under a contract for deed must make a similar tender of the full purchase amount in order to be entitled to specific performance.

*Long v. Smith*, 776 S.W.2d 409, 414 (Mo. App. W.D. 1989).

notes are what Plaintiff refers to as the "2015 Agreement." Attorney Warren testified that the parties did not ask him to prepare a formal contract that day.

Ten days after that meeting, Manjinder brought a police officer to Lucky's and discharged Charlie from his position as assistant manager. Just shy of two weeks later, Manjinder assaulted Charlie at his residence. In November 2016, Manjinder sold Lucky's to KLSG under a formal Asset Purchase Agreement.

Plaintiff's suit against Defendants consisted of seven counts. In count 1, Plaintiff sought specific performance of Defendants' alleged obligation in the 2011 MOU to transfer a 50% interest in Lucky's to Plaintiff. In count 2, Plaintiff requested damages for the alleged breach of the 2011 MOU in excess of $368,000. In count 3, Plaintiff sought specific performance of the 2015 Agreement to transfer a 50% interest in Lucky's to Plaintiff. Count 4 sought damages in excess of $736,000 for the alleged breach of the 2015 Agreement. Count 5 sought relief against Manjinder for the assault he committed on Charlie.[6] Count 6 sought a declaratory judgment that Plaintiff had an ownership interest in Lucky's prior to the sale of Lucky's assets to KLSG. Count 7 alleged that Defendants' transfer of Lucky's assets to KLSG was fraudulent, and it requested relief in the form of the appointment of a receiver, an order of the court declaring the sale void and of no effect, and an award of attorney fees.

During the three-day bench trial, the trial court heard conflicting testimony on many of the contested issues. As to the payments allegedly made toward the purchase price of the first 50% purchase of Lucky's pursuant to the 2011 MOU, Charlie testified that he paid $3,000 toward the sale price each month, beginning in October 2011, once by

---

[6] The trial court awarded Charlie actual and punitive damages on count 5 for that assault. The findings and damages awarded to Charlie on that count are not at issue in this appeal.

means of a written check to Manjinder, and the remaining payments via alleged wage assignments made by transferring $3,000 from Lucky's bank account to Manjinder's personal bank account. Charlie testified that these payments from Lucky's to Manjinder were in lieu of Charlie's monthly salary as assistant manager. Manjinder, however, testified that the $3,000 monthly payments from Lucky's account to Manjinder's account constituted Manjinder's monthly salary as the manager of the convenience store. The $3,000 per month payments by Lucky's to Manjinder continued through August 2014.

Regarding the 2011 MOU, the trial court found that Charlie failed to prove that he had performed or tendered performance pursuant to that agreement. Specifically, the trial court stated that "the payments Plaintiff even alleges to have made total only $229,023.07, and not the $245,000.00 the Plaintiff was required to pay . . . [under the terms of the 2011 MOU.]" The trial court, however, declined to make a finding that the payments were made pursuant to the 2011 MOU because "even if they were made as Plaintiff alleges[,] they do not, as a matter of law, constitute performance of the agreement . . . ." The trial court excluded all parol evidence regarding the payment method and manner as discussed above, and Charlie's request for specific performance and damages based upon Defendants' alleged breach of the 2011 MOU was denied.

The trial court's findings in regard to the 2015 Agreement that memorialized the parties' discussions at Attorney Warren's office were:

(a) The Court finds that the writing contains a number of different notations, in different handwriting, and written by different individuals;

(b) The Court finds that it cannot determine the nature and extent of the interest being sold, nor the liquidated purchase price of the interest being sold, from the face of the document; and

(c) The Court finds that the writing is not signed by any person.

5

Therefore, the Court finds that no agreement was entered into in 2015.

Based upon these findings, the trial court denied all relief sought by Plaintiff, except for the relief granted on Charlie's claim against Manjinder for physical assault. We will recite additional evidence in our analysis of Plaintiff's points.

**Analysis**

*Points 1 and 2*

Because Plaintiff's first two points both allege the trial court erred in excluding parol evidence, and because both fail for the same reason, we address them together.

In point 1, Plaintiff claims that the trial court erred in

excluding parol evidence and concluding that Charlie breached the 2011 [MOU] because it misinterpreted and misapplied Missouri law in that the [2011 MOU] was not an integrated contract, and the excluded evidence of the parties' wage assignment and bonus allocation agreement was not contradictory to its terms.

Plaintiff's second point on appeal claims the trial court erred in

excluding parol evidence and concluding that Charlie breached the 2011 [MOU] because it misinterpreted and misapplied Missouri law in that the [trial] court failed to determine the materiality of performance, and failed to consider the parties' wage assignment and bonus allocation agreement.

In support of his points, Plaintiff argues that the 2011 MOU was not an integrated contract because it stated on its face that the parties

contemplate entering into the following agreement *upon completion and finalizing of formal documents* carrying out the terms set forth below, *provided that* such agreement and terms can be accomplished consistent with, and without endangering or harming existing Deeds, Deeds of Trust, Promissory Notes, or other agreements and obligations of [Lucky's] or the parties herein.

Based upon this language, Plaintiff argues that the 2011 MOU was only an abbreviated agreement that would be completed sometime later. Based upon the premise

6

that the 2011 MOU was not an integrated, completed document, Plaintiff argues that parol

evidence of the parties' intent was admissible under Missouri law.

According to Missouri law:

> Before applying the parol evidence rule, a court first must determine whether a contract is integrated. *State ex rel. Missouri Highway & Transp. Comm'n v. Maryville Land P'ship,* 62 S.W.3d 485, 489 (Mo. App. E.D. 2001). "A written agreement is integrated if it represents a final expression of one or more terms of the agreement." *Id.* To determine whether a writing is integrated, we look to the face of the document itself without considering the surrounding facts and circumstances. *Id.* at 489. If the document appears to be a complete agreement on its face, it is conclusively presumed to be the final and complete agreement between the parties. *Jake C. Byers, Inc. v. J.B.C. Investments,* 834 S.W.2d 806, 812 (Mo. App. E.D. 1992). When a written contract is a completely integrated agreement, the parol evidence rule precludes even consistent additional terms within its scope from consideration. *Maryville Land P'ship,* 62 S.W.3d at 489 (citing *Centerre Bank of Kansas City v. Distributors, Inc.,* 705 S.W.2d 42, 51 (Mo. App. W.D. 1985); Restatement (Second) Contracts, § 209)[.]

***Rosenfeld v. Boniske***, 445 S.W.3d 81, 87 (Mo. App. E.D. 2014).

Here, we need not determine whether the 2011 MOU was an integrated agreement

because the parol evidence Plaintiff wanted to submit would not have changed the

outcome. When the trial court refused to accept parol evidence, Plaintiff made an offer of

proof based upon Exhibit 6, which Plaintiff claims contains "handwritten and typed

payment summaries with supporting bank records showing the wage assignment payments

and the bonus allocation payments." Plaintiff argues that Exhibit 6 was admissible parol

evidence that Charlie made additional payments out of his portion of the business profits

toward the total purchase price of $245,000.[7] Plaintiff argues that applying his share of the

business profits toward his half-ownership of the business was discussed between the

---

[7] In Plaintiff's offer of proof, Harpreet cited payments of $25,000, $15,000 and $15,000.

parties and was an integral part of the 2011 MOU, even though it was not memorialized in writing.

The significant flaw in this argument is that Plaintiff assumes that the trial court believed his evidence about having made payments toward the purchase price in the form of wage assignments and a bonus allocation. On that issue, the trial court – the finder-of-fact in this case – found that

> [a]side from one check of $3,000.00 written on an account of Plaintiff and paid to [Manjinder], the Court was presented with no evidence of any other payments made by Plaintiff to Defendants that were from Plaintiff's personal account. Plaintiff presented evidence of payments made from a [Lucky's] account to [Manjinder] as payment made on the purchase price of the 50% interests in the business. Said account was owned by [Lucky's] and solely owned by [Manjinder].
>
> The Court finds Plaintiff's explanation of the payments made from [Lucky's] to [Manjinder] as payments on the purchase price of 50% ownership on the business to be improbable and unsupported by any other reliable evidence, such as receipts of purchase payments, memo of purpose for payments, or payroll records supporting or documenting the claim of Plaintiff. That a business would allow an employee to use the money of the business to purchase said business strains the imagination and lacks credibility.

"When evidence is contested by disputing a fact in any manner, an appellate court defers to the trial court's determination of credibility." *Schmidt v. Dir. of Revenue*, 611 S.W.3d 542, 547 (Mo. App. E.D. 2020). It is clear from the judgment that the trial court did not believe Plaintiff's evidence regarding the wage assignment and bonus allocation. Rather, the trial court found it "improbable and unsupported by any other reliable evidence, . . . and lack[ing] credibility." We defer to that credibility determination. *Id.*

In addition to disbelieving Plaintiff's evidence of the wage and bonus assignments, the trial court also found that those assignments, *even if they had been made*, did not reach the entire purchase price of $245,000 that was required under the 2011 MOU to be paid in

8

full before Plaintiff would become a 50% owner of Lucky's. Specifically, the trial court stated:

> Even if the Court had found Plaintiff's account of the additional payments paid to [Manjinder] from [Lucky's] were from Plaintiff as payments to [Manjinder] to be credible, and given the $3,000.00 per month from August 2011 to April 2015 as assignment of wages earned by Plaintiff, the amount claimed by Plaintiff still does not reach the entire purchase price of $245,000.00 which would need to be reached prior to Plaintiff becoming a 50% owner of [Lucky's]. Under any theory of payments Plaintiff claims to have made, Plaintiff still failed to pay the entire amount of $245,000.00 and stopped payments in April 2015. Therefore, the Court finds that the Plaintiff has failed to meet his burden of proof, and Plaintiff is in default of the 2011 [MOU].

"[P]roof of performance or tender of performance is necessary to the recovery upon an express contract[.]" ***ROH Farms, LLC***, 572 S.W.3d at 126. A party seeking specific performance must prove that he or she performed, or tendered performance, of his or her portion of the contract. ***Id.*** Even accepting Plaintiff's evidence of the wage and bonus assignments as payments on the agreement, and taking as true Exhibit 6 from Plaintiff's offer of proof into consideration, Plaintiff would still have paid only $229,023.07 toward the $245,000 contract price, leaving Plaintiff $15,976.93 short of full payment. The 2011 MOU specifically provided that "[Charlie] will own a 50% interest in [Lucky's] upon full and final completion of the terms of the agreement and payment of the *entire* purchase price" (emphasis added).

Because Plaintiff failed to meet his burden to convince the trial court that he had paid the entire purchase price, with or without considering his proffered parol evidence, points 1 and 2 fail for lack of prejudice.

9

*Point 3*

Point 3 claims the trial court erred in ignoring equitable exceptions to the statute of frauds and thereby concluded that no 2015 contract existed between the parties because the trial court misinterpreted and misapplied section 432.010,[8] in that Plaintiff partially performed on the contract by tendering payment, Manjinder accepted payment, and gross injustice would result if section 432.010 were to be applied.  We disagree.

Section 432.010 (often referred to as "the statute of frauds") provides that all contracts for the sale of land must be in writing and signed by the party to be charged therewith.  ***Shellabarger v. Shellabarger***, 317 S.W.3d 77, 81 (Mo. App. E.D. 2010); section 432.010.  Here, the trial court found that "among the assets [Charlie] claims were sold to him was the real property owned by the [Lucky's]."  There are equitable exceptions to the statute of frauds, specifically, "equity will decree specific performance where a party has so far acted on the promise that to deny him the benefit of the agreement would be unjust.  This resort to equity avails sparingly, and only upon clear and convincing proof of a definite agreement."  ***Gegg v. Kiefer***, 655 S.W.2d 834, 837 (Mo. App. E.D. 1983).

To be entitled to an equitable exception from the requirement of a signed writing to convey real estate, the seeker of equity must, *inter alia*, prove a clear, explicit and definite oral contract existed as pleaded.  ***Id.*** at 837.

With respect to the 2015 Agreement, the trial court found, as stated above, that it could neither determine the interest being sold from the face of the document nor the purchase price, and the writing was not signed by anyone.  As a result, the trial court found that no agreement had been entered into in 2015.  The trial court's findings on this issue

---

[8] Unless otherwise noted, all statutory citations are to RSMo 2016.

reveal that it did not believe that the parties had entered into an explicit and definite contract in 2015, whether oral or written.

Plaintiff offered Exhibit 9 as evidence of the 2015 Agreement. Exhibit 9 contains one page of handwritten notes. The notes include: "Charlie buying all 100%[;]" "1,350,000 LLC & Hickory House[;]" and "170,000 inventory[.]" All other notations on the page are numbers unaccompanied by any explanation, with the exception of two statements: "6-5 payments of 7718.15" and "Charlie is responsible for all LLC's bils [sic.]"

The trial court did not misinterpret or misapply the requirements of the statute of frauds, or any equitable exception thereto, with respect to the 2015 Agreement. Point 3 is denied.

*Point 4*

Plaintiff's fourth point claims

the trial court erred in excluding parol evidence and concluding that Charlie and Harpreet have no ownership interest in Lucky's assets sufficient to justify a fraudulent transfer claim because it misinterpreted and misapplied Missouri law in that the parties' wage assignment and bonus allocation agreement was not contradictory to an integrated contract, and in that Charlie's performance of both agreements requires application of an equitable exception to the statute of frauds.

We disagree.

"In order to set aside a conveyance as being in fraud of creditors, it must be shown that the conveyance was made with an intent to hinder, delay or defraud creditors." **Mark Twain Kansas City Bank v. Riccardi**, 865 S.W.2d 425, 427 (Mo. App. W.D. 1993). *See also* **Taylor v. Clark**, 140 S.W.3d 242, 251 (Mo. App. S.D. 2004) and section 428.024.

On this issue, the trial court found as follows:

The Court has determined that Plaintiff had only a contractual right that he did not fulfill regarding the purchase of [Lucky's], pursuant to the Court's analysis of Plaintiff's breach of contract claims relative to the 2011 [MOU] and [the] 2015 [Agreement]. Given the Court's finding that Plaintiff did not fulfill the terms of the contract and was in default, there is no ownership interest that Plaintiff was entitled to protect, or for which a fraudulent transfer claim could be justified. Therefore, the Court finds in favor of [Defendants] upon Count [7] of Plaintiff's First Amended Petition.

Plaintiff agrees with the trial court's finding that this point depends upon the success of Plaintiff's previous points. In other words, the trial court's finding that Charlie had breached the 2011 MOU and that the 2015 Agreement was not a contract precludes any finding that a fraudulent transfer had occurred in violation of section 428.024. As noted in our analysis of points 1 and 2, the trial court correctly found that Plaintiff failed to prove that he had an ownership interest in Lucky's. Thus, devoid of any such interest, Plaintiff's claim that Lucky's was fraudulently conveyed to its current owners must fail. *See* section 428.009(3), (4) (defining the terms "claim" and "creditor" under the Missouri Uniform Fraudulent Transfers Act).

Point 4 is also denied, and the judgment of the circuit court is affirmed.


DON E. BURRELL, J. – OPINION AUTHOR

JACK A. L. GOODMAN, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS

12